Matthew Shayefar (Cal. SBN. 289685)
matt@shayefar.com
Law Office of Matthew Shayefar, PC
750 N. San Vicente Blvd, 800 West
West Hollywood, California 90069
Tel: 323-948-8101

Valentin Gurvits (MA Bar No. 643572) *pro hac vice*
vgurvits@bostonlawgroup.com | Tel: 617-928-1804
Frank Scardino (MA Bar No. 703911) *pro hac vice*
frank@bostonlawgroup.com | Tel: 617-928-1805
Boston Law Group, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459

*Attorneys for Plaintiff Maria Zurabova*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA ZURABOVA<br>    Plaintiff,<br><br>v.<br><br>BLOCK, INC.;<br>SQUARE CAPITAL, LLC; and<br>SQUARE FINANCIAL SERVICES, INC.;<br>    Defendants. | CASE NO. 4:23-CV-00953-JST<br><br>**FIRST AMENDED COMPLAINT FOR**<br>    **I. CONVERSION;**<br>    **II. BREACH OF CONTRACT;**<br>    **III. BREACH OF COVENANT OF**<br>    **GOOD FAITH AND FAIR DEALING;**<br>    **IV. PROMISSORY ESTOPPEL;**<br>    **V. CAL. CIV. CODE §§1750 *ET SEQ.*;**<br>    **VI. UNLAWFUL AND UNFAIR**<br>    **BUSINESS PRACTICES;**<br>    **VII. UNJUST ENRICHMENT; AND**<br>    **VIII. VIOLATION OF THE**<br>ELECTRONIC FUNDS TRANSFER ACT.<br><br>**DEMAND FOR JURY TRIAL** |

## FIRST AMENDED COMPLAINT

This is an action for Conversion, Breach of Contract, Promissory Estoppel, Unfair Trade

Practices, Unjust Enrichment and related causes of action, wherein Plaintiff Maria Zurabova

("**Zurabova**") seeks damages and other relief for the actions committed and/or omitted by the above listed Defendants. Zurabova made more than $645,000 worth of purchases with a merchant using Defendants' payment processing services. Defendants received these funds from Zurabova's bank but failed to pass these funds along to the merchant, failed to refund them to Zurabova, and instead illegally retained and converted more than $645,000 in funds for nearly a year.

## PARTIES

1.     Plaintiff Maria Zurabova is an individual who is a United States citizen residing in Florida.

2.     Defendant Block, Inc. is a Delaware corporation with a principal place of business at 1455 Market Street, Suite 600, San Francisco, California.

3.     Defendant Square Capital, LLC is a Delaware limited liability company with a principal place of business at 1455 Market Street, 8th Floor, San Francisco, California.

4.     Defendant Square Financial Services, Inc. is a Utah corporation with a principal place of business in California.

5.     Defendants Block, Inc., Square Capital, LLC, and Square Financial Services, Inc., are referred to herein collectively as "**Square**."

## JURISDICTION AND VENUE

6.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties, and the amount in controversy exceeds $75,000.

7.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 because, upon information and belief, each Defendant's principal place of business is in San Francisco, California.

8.      Jurisdiction and Venue is also proper in this district because the parties consented to jurisdiction and venue in the Northern District of California (as well as the state courts in San Francisco County) according to the ninth paragraph of Section 22 of Square's terms of service between Square and Zurabova (the "**Terms**," a copy of which is attached hereto as **<u>Exhibit A</u>** and could be found at the following url: https://squareup.com/us/en/legal/general/ua).

9.      *Divisional Assignment.*  Pursuant to L.R. 3-2(d) and 3-5(b), this case should be assigned to the San Francisco Division because, upon information and belief, each Defendant's principal place of business is in San Francisco County, and Defendants committed their wrongful actions and/or omissions out of San Francisco County.

10.      As described herein, Zurabova used Square's payment processing services when she purchased diamonds and jewelry from a merchant, making Zurabova and Square party to the Terms.

## FACTS

11.      Between about March 7 and March 9, 2022, Zurabova made several purchases of diamonds and other pieces of jewelry (the "**Merchandise**") from Royal Star Inc., a jeweler in the Diamond District of New York City, located at 36 West 47th Street 204, New York, NY 10036 (the "**Merchant**").

12.      For all purposes relevant hereto, the Merchant directed Zurabova to use Square's payment processing services to process all purchases Zurabova made with the Merchant, and by Zurabova making payments through the Square payment processing services, Zurabova and Square became parties to the Terms.

13.      The Terms contain an arbitration provision that calls for arbitration before the American Arbitration Associations ("**AAA**"). The Terms contain multiple provision which the AAA considers illegal.

14.     Upon information and belief, AAA notified Square multiple times about the illegal provisions in the Terms, yet Square refuses to change them.

15.     The Merchant, using Square's payment processing system, tendered to Zurabova approximately twenty-eight (28) separate invoices amounting to $645,083 of Merchandise (the "**Invoices**") that Zurabova was purchasing from the Merchant.

16.     Using Square's payment processing services, Zurabova paid the Invoices with several bank debit cards,[1] and the $645,083 (the "**Funds**") was transferred from several bank accounts to the custody of Square, who was then obligated to transfer the Funds to the Merchant.

17.     Square's Terms begin with the following provision: "These General Terms of Service ('General Terms') are a legal agreement between you, as a current or prospective customer of Square's services ('you,' 'your') and Block, Inc. Square Capital, LLC, and/or Square Financial Services, Inc., ('Square,' 'we,' 'our' or 'us') and govern your use of Square's services, including mobile applications, websites, software, cloud-based solutions, hardware, and other products and services in the United States of America (collectively, the 'Services'). By using any of the Services, you agree to these General Terms and any policies referenced within...."

18.     Zurabova became parties to the Terms with Square by, without limitation, paying the Invoices through Square's system, which constitutes Zurabova using both Square's

---

[1] Some of the Invoices were paid with debit cards in the name of Ms. Zurabova's father, Alexander Zurabov, Ms. Zurabova's brother, Georgii Zurabov, Ms. Zurabova's husband, Andres Rodriguez, and Ms. Zurabova's friend, Elena Nisenbaum.  Ms. Zurabova had agreements with her brother, father, and Ms. Nisenbaum regarding these purchases wherein Ms. Zurabova agreed to reimburse them for these purchases at a later time.  For all intents and purposes, the Funds belong to Ms. Zurabova and she was ultimately responsible for the Invoices.

1    "website" and "software" as defined in the preceding paragraph, meaning that Zurabova became

2    party to the Terms with Square.

3          19.    The debit cards used to pay the Invoices were linked to Russian bank accounts,

4    one of which was a Russian Alfa-Bank account in Ms. Zurabova's name.

5          20.    Although Ms. Zurabova is a citizen of the United States, Ms. Zurabova, on

6    account of having family and friends in Russia, and who was – before the Russian invasion of

7    Ukraine – an occasional traveler to Russia, maintained a Russian bank account.

8          21.    At the time of the Merchandise purchases, purchasing goods in the United States

9    by a U.S. person using funds held in a Russian bank account was perfectly legal – and it

10   continues to be legal today.

11         22.    Despite receiving the Funds before any sanctions of Russian banks were in place,

12   and despite the fact that none of the sanctions affected Zurabova's transactions, Square claimed

13   that Alfa Bank was sanctioned and that therefore it could not process Zurabova's purchase of the

14   Merchandise.

15         23.    Square's claim as described in Paragraph 22 above was a false and misleading

16   statement.  While Alfa Bank may have been sanctioned, the sanctions did not take effect until

17   March 26, 2022, more than two weeks following Zurabova's payment of the Invoices and

18   Square's receipt of the Funds, and, moreover, the sanctions only covered transactions involving

19   Alfa Bank debt or equity, and not purchases with debit cards, so the sanctions clearly do not

20   apply to Zurabova's transactions as described herein.

21         24.    Instead of transferring the Funds to the Merchant, or returning the Funds to Ms.

22   Zurabova, Square retained the Funds and has refused to return them or even offer any reasonable

23   explanation as to why Square retained the Funds.

24

25.     As Square never paid these Funds to the Merchant, Ms. Zurabova never received the Merchandise for which she paid.

26.     Despite numerous requests from Zurabova and the Merchant, Square never released the Funds to the Merchant and never refunded Zurabova the money.  Indeed, as of today, more than one year after Square received Zurabova's $645,083, Square continues to retain the Funds, despite having no legal right to retain the Funds.

27.     In a letter dated December 16, 2022, Zurabova, through counsel, sent a detailed demand letter and notice of intent to commence arbitration to Square outlining the wrongdoing described herein, in even greater detail (the "**Demand Letter**").  A copy of that Demand Letter, excluding some of its exhibits, which are attached elsewhere to this First Amended Complaint, is attached hereto as **Exhibit B**.

28.     The Demand Letter contained extensive evidence showing that Zurabova was entitled to an immediate return of the Funds.

29.     Zurabova also provided copies of all of the Merchant's invoices provided through Square's system (attached hereto as **Exhibit C**, previously attached as Exhibit 2 to the Demand Letter) as well as proof that these invoices were paid (attached hereto as **Exhibit D**, previously attached as Exhibit 3 to the Demand Letter).

30.     The Demand Letter also included an email from Square dated December 15, 2022, arguing that Square is entitled to hold the Funds because a card that Zurabova used was tied to a sanctioned Russian bank.  (A copy of this email is attached hereto as **Exhibit E**, previously attached as Exhibit 4 to the Demand Letter).

31.     Finally, the Demand Letter also included a copy of the Office of Foreign Assets Control (OFAC) sanctions issued against Alfa-Bank.  (A copy of this is attached hereto as **Exhibit F**, and previously attached as Exhibit 5 to the Demand Letter).

32.     The Demand Letter was sent in compliance with Section 22, second paragraph, of the Terms.

33.     The Demand Letter was delivered to Square via Certified Mail, FedEx, First Class Mail, and Email, and complied with the Term's requirements for pre-arbitration notice (Section 22, second paragraph).

34.     As of the date hereof, Square has failed to respond to the Demand Letter and failed to release or return the Funds.

35.     On Thursday, February 23, 2023, Zurabova filed for arbitration against Square with AAA making substantially the same arguments and allegations as contained herein.

36.     On Monday, February 27, 2023, AAA emailed Square and counsel for Zurabova and informed Square that there were multiple provisions of the Square arbitration agreement that violated AAA's policies and principles.  AAA asked Square to waive these illegal provisions in order for the arbitration to proceed.  AAA informed the parties that if Square refused to waive these illegal provisions, that AAA would not be able to conduct the arbitration, and this dispute would have to be submitted to Court.

37.     Square failed to meaningfully respond to the arbitration claim until April 11, 2023, almost four months following the Demand Letter.  In that response, Square, for the first time, alleged that Zurabova was not a party to the Terms, despite the clear language of the first paragraph of the Terms.  Square also refused AAA's demand to waive the illegal provision in its arbitration agreement and asked that AAA decline to administer the arbitration.  A copy of Square's April 11, 2023 letter is attached hereto as **Exhibit G**.

38.     On April 26, 2023, AAA declined to proceed with the arbitration claim because Square refused to waive the illegal provision in its arbitration agreement and for otherwise violating AAA's policies.  The April 26, 2023 letter from AAA is attached hereto as **Exhibit H**.

**COUNT I**

**Conversion**

39.     Zurabova hereby repeats and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

40.     Zurabova transferred and entrusted the Funds to Square as part of its payment processing services, for the sole purpose of Square transferring the Funds to the Merchant for Zurabova's purchase of the Merchandise.

41.     As described herein, Square received and accepted the Funds from Zurabova, but failed to transfer the Funds to the Merchant, and failed to return the Funds to Zurabova.

42.     After failing to transfer the Funds to the Merchant or returning the Funds to Zurabova, Square has no legal right to the Funds, but Square continues to illegally retain, hold, and convert the Funds.

43.     Zurabova was, is, and continues to be damaged by Square's conversion of her property.

**COUNT II**

**Breach of Contract**

44.     Zurabova hereby repeats and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

45.     Zurabova and Square are parties to a contract created when Zurabova paid the Invoices provided by Square through Square's funds processing system, and Square accepted the Funds and agreed to transfer the Funds to the Merchant.

46.     In addition, Zurabova is a third-party beneficiary of the Merchant's contract with Square.

47.     Square breached those contracts by failing to transfer the Funds to the Merchant and also refusing to refund the Funds to Zurabova.

48.     Zurabova has been damaged by Square's breach of contract.

## COUNT III

### Breach of Covenant of Good Faith and Fair Dealing

49.     Zurabova hereby repeats and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

50.     Implied within the contract between Zurabova and Square are covenants of good faith and fair dealing, which prohibit either the parties thereto from unlawfully interfering with the other party's right to receive the benefits of the contract.

51.     Zurabova performed all of her duties and obligations under the contract.

52.     Square unjustly, unfairly, and in bad faith, interfered with Zurabova's benefits that Zurabova reasonably anticipated receiving under the contract.

53.     Zurabova has suffered direct harm and damages as a result of Square's actions and omissions, for which Square is liable.

## COUNT IV

### Promissory Estoppel

54.     Zurabova hereby repeats and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

55.     When Zurabova paid the Invoices provided by the Merchant and Square, Square implicitly or explicitly promised that it would then transfer the Funds to the Merchant.

56.     Square failed to transfer the Funds to the Merchant and refused to refund the Funds to Zurabova.

57.     Zurabova has been damaged by Square's breach of its promise, and Zurabova can only be made whole if Square processes the referenced payments, or refunds the Funds to Zurabova.

## COUNT V

**Breach of the California Consumers Legal Remedies Act – Cal. Civil Code §§1750 *et seq***

58.     Zurabova hereby repeats and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

59.     For all times relevant hereto, Zurabova is a consumer for the purposes of Cal. Civil Code §§1750.

60.     For all times relevant hereto, Square is a business for the purposes of Cal. Civil Code §§1750.

61.     Zurabova and Square entered into a transaction wherein Zurabova transferred funds to Square, and Square, as a payment processor, was to transfer these funds to the Merchant.

62.     Square failed to transfer the Funds to the Merchant and refused to refund the Funds to Zurabova.

63.     For the reasons stated herein, Square's actions and omissions are unfair and deceptive under the meaning of Cal. Civil Code §§1750.

64.     Zurabova has been damaged by Square's unfair and deceptive acts and practices.

## COUNT VI

**UNLAWFUL AND UNFAIR BUSINESS PRACTICES**

First Amended Complaint – Zurabova v. Block, Inc. et al

65.     Zurabova hereby repeats and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

66.     By their conduct as set forth herein, Square has willfully or knowingly engaged in fraudulent, deceptive, unlawful, unfair, and/or other wrongful acts and practices.

67.     Without limitation, Square's actions and omissions have been in violation of California Business and Professions Code Section 17200 *et seq.*

68.     As a result, Zurabova has suffered harm and damages for which Square is liable.

## COUNT VII

### Unjust Enrichment

69.     Zurabova hereby repeats and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

70.     By engaging in the acts and omissions described herein, Square received the Funds and refused to transfer the Funds to the Merchant or refund them to Zurabova.

71.     By retaining the Funds, Square has been unjustly enriched by Zurabova, and equity and good conscience require Square to make restitution to Zurabova for the Funds that Square has inequitably retained from Zurabova.

## COUNT VIII

### Violation of Electronic Funds Transfer Act 15 U.S.C. §§1693, *Et Seq.*

72.     Zurabova hereby repeats and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

73.     The Electronic Fund Transfer Act and the regulations promulgated thereunder (Regulation E) (the "EFTA") apply to point-of-sale transfers and transfers resulting from debit card transactions.

74.     Zurabova is a "consumer" under the EFTA.

75.    Square is a "financial institution" under the EFTA.

76.    Financial institutions have error resolution obligations pursuant to the EFTA if a consumer notifies the financial institution of an "error" (as defined in the EFTA).

77.    The failure of Square to refund the Funds to Zurabova or transfer the Funds to the Merchant, and instead retain the Funds for its own benefit for more than a year, as described herein, constitutes an error under the EFTA (the "Error").

78.    Zurabova gave Square multiple notices of the Error, including, without limitation, the Demand Letter.

79.    Upon receiving notice of the Error, Square was obligated to conduct an "investigation" into the matter in accordance with the EFTA.

80.    Upon information and belief, no such investigation was ever conducted, or at minimum no such investigation was reasonably pursued in good faith.

81.    Square never notified Zurabova about any investigation it conducted under the EFTA, and, on the contrary, completely ignored Zurabova's repeated requests to resolve the Error.

82.    Square has no reasonable basis to believe that the Error was not actually an "error" under the EFTA.

83.    Square's failure to return the Funds to Zurabova or to credit the Funds to the Merchant as described herein is a violation of EFTA entitling Zurabova to treble damages pursuant to 15 U.S.C. § 1693f and her reasonable attorney's fees pursuant to 15 U.S.C. § 1693m(a)(3).

84.    Zurabova has been damaged by Square's violations of the EFTA.

**A JURY TRIAL IS DEMANDED ON ALL COUNTS SO TRIABLE**

**REQUESTED RELIEF**

WHEREFORE, Zurabova prays that this Honorable Court award the following:

1.      Enter judgment for Zurabova on all Counts of her First Amended Complaint;

2.      Enjoin Square from retaining the Funds and ORDER Square to promptly remit the Funds to Zurabova;

3.      Award Zurabova damages as determined at trial, plus attorneys' fees, interest and costs as provided by law and by the Terms;

4.      Award Zurabova statutory damages, punitive damages, and attorneys' fees on account of Square's violation of the California Consumers Legal Remedies Act – Cal. Civil Code §§1750 *et seq.* and other applicable provisions of law;

5.      Award Zurabova statutory damages, punitive damages, treble damages, and attorneys' fees on account of Square's violation of the Electronic Fund Transfer Act 15 U.S.C. §§1693 *et seq.*; and

6.      Grant Zurabova such other relief as this Court deems just.

LAW OFFICE OF MATTHEW SHAYEFAR, PC

By: /s/ *Matthew Shayefar*
MATTHEW SHAYEFAR
Attorney for Plaintiff

Dated: May 1, 2023