Lennette W. Lee (SBN 263023)
llee@kslaw.com
KING & SPALDING LLP
633 W. 5th Street, Suite 1600
Los Angeles, CA 90071
Tel: (213) 443-4355
Fax: (213) 443-4310

Leigh Nathanson (admitted *pro hac vice*)
lnathanson@kslaw.com
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Tel: (212) 556-2100
Fax: (212) 556-2222

Attorneys for Defendants
BLOCK, INC., SQUARE CAPITAL, LLC, and
SQUARE FINANCIAL SERVICES, INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| MARIA ZURABOVA,<br><br>          Plaintiff,<br><br>vs.<br><br>BLOCK, INC.;<br>SQUARE CAPITAL, LLC; and<br>SQUARE FINANCIAL SERVICES, INC.<br><br>          Defendants. | Case No. 4:23-CV-00953-JST<br><br>*Assigned to the Honorable Jon S. Tigar in Courtroom 6*<br><br>**DEFENDANTS BLOCK, INC., SQUARE CAPITAL, LLC, AND SQUARE FINANCIAL SERVICES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[Request for Judicial Notice and Exhibits thereto and [Proposed] Order filed concurrently]<br><br>Date:      September 14, 2023<br>Time:     2:00 p.m.<br>Ctrm.:    6<br>Before the Hon. Jon S. Tigar |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 14, 2023, or as soon thereafter as the matter may be heard, before the Honorable Jon S. Tigar of the United States District Court for the Northern District of California, Defendants Block, Inc., Square Capital, LLC, and Square Financial Services, Inc. ("Defendants") will move the Court for an order dismissing Plaintiff Maria Zurabova's ("Plaintiff's") First Amended Complaint ("FAC") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff does not and cannot state a claim for relief against Defendants for multiple, independent reasons:

*First*, Plaintiff lacks the requisite Article III standing to assert claims against Defendants in this action because she cannot demonstrate that her claims are judicially redressable. *See* Fed. R. Civ. Proc. 12(b)(1). Plaintiff concedes that the funds she seeks to recover originated from Russian bank accounts and are now subject to regulatory sanctions promulgated by the United States Department of Treasury, which prohibit the transfer of such funds. This Court lacks the authority to order Defendants to remit or transfer such funds in derogation of these federal sanctions. Plaintiff's alleged injuries are therefore not judicially redressable, and this action should be dismissed because she lacks standing. *See M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018).

*Second*, even if Plaintiff could demonstrate Article III standing, each of Plaintiff's pled causes of actions still fail because Plaintiff does not, and cannot, allege sufficient facts establishing all required elements of each claim. Specifically, Plaintiff does not identify any specific representation or promise Defendants purportedly made to her in connection with her decision to utilize Defendants' platform to initiate numerous debit card transfers from Russian bank accounts, as required under the contract and tort theories she pursues. Rather, Plaintiff concedes, as she must, that Defendants' terms expressly state that Defendants retain the right to do exactly what they did here: hold the funds in order to investigate unusual transactions in accordance with the law. Plaintiff cannot state contract claims because she is not in a contractual relationship with

Defendants. She also cannot state contract or tort claims based upon Defendants' adherence to their stated terms and compliance with the law. *See* Fed. R. Civ. Proc. 12(b)(6).

Nor can Plaintiff rehabilitate her failed claims with further amendment. No further allegations could revive her claims and entitle her to relief from Defendants. Accordingly, the FAC should be dismissed with prejudice.

This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities, Defendants' Request for Judicial Notice ("RJN") and the exhibits attached thereto, the complete files and records in this action, and such other argument and evidence as may be presented at or before the hearing of this matter.

Dated:  June 29, 2023                        **KING & SPALDING, LLP**

By: _  /s/ Lennette W. Lee_
    Lennette W. Lee (SBN 263023)
    *llee@kslaw.com*
    KING & SPALDING LLP
    633 W. 5th Street, Suite 1600
    Los Angeles, CA 90071
    Tel: (213) 443-4355
    Fax: (213) 443-4310

    Leigh Nathanson (admitted *pro hac vice*)
    *lnathanson@kslaw.com*
    KING & SPALDING LLP
    1185 Avenue of the Americas, 34th Floor
    New York, NY 10036
    Tel: (212) 556-2100
    Fax: (212) 556-2222

    Attorneys for Defendants
    BLOCK, INC., SQUARE CAPITAL, LLC,
    and SQUARE FINANCIAL SERVICES, INC.

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................................1

II. RELEVANT BACKGROUND ..............................................................................................3

    A. Factual Background .................................................................................................3

        1. Square's POS Services for Merchants ........................................................3

        2. Prior to Plaintiff's Transactions, the Federal Government Restricts Transfers of Russian Funds.........................................................................4

        3. Plaintiff Initiates 28 Transactions with a Square Merchant Using Ten Different Debit Cards in Six Different Names. ....................................5

        4. Defendants Flag Plaintiff's Transactions for Investigation Pursuant to Their Terms.............................................................................................5

        5. Shortly After Plaintiff's Transactions, the Funds Become Subject to Federal Sanctions. ...............................................................................6

    B. Procedural History ..................................................................................................7

III. Legal Standard ........................................................................................................................7

IV. Plaintiff Lacks Standing to Sue Defendants Because Her Alleged Injury Cannot Be Redressed by Judicial Relief. ..................................................................................................8

V. PLAINTIFF FAILS TO STATE ANY CLAIM FOR RELIEF IN THE FAC. ....................9

    A. Plaintiff Fails to Allege Breach of Contract or of the Implied Covenant of Good Faith and Fair Dealing Because the Defendants' Terms Expressly Authorized the Conduct at Issue. ..........................................................................9

    B. Plaintiff's Conversion Claim Fails Because She Assented to the Transactions. .......................................................................................................12

    C. Plaintiff's Promissory Estoppel Claim Fails Because Defendants Made No Promise to Permit—and Expressly Reserved the Right to Defer or Restrict—Plaintiff's Transactions. .......................................................................13

    D. Plaintiff's CLRA Claim Fails Because She Identifies No False or Misleading Statements by Defendants. .................................................................14

    E. Plaintiff's UCL Claim Fails Because She Alleges No Misconduct. ......................15

    F. Plaintiff Cannot Bring an Unjust Enrichment Claim Because She Alleges a Contract Governs the Dispute. .............................................................................17

    G. Plaintiff's EFTA Claim Fails Because Defendants Did Not Act as a Financial Institution for Plaintiff and Plaintiff Does Not Allege An Error. .........19

VI.     Plaintiff Cannot Rehabilitate Her Claims with Amendment. .............................................20

VII.    Conclusion ..........................................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AccuImage Diagnostics Corp. v. Terarecon, Inc.*,
    260 F. Supp. 2d 941 (N.D. Cal. 2003) ...................................................................................17

*In re Actimmune Mktg. Lit.*,
    No. 08 Civ. 02376, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009).....................................16, 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................7, 8, 16

*Barrett v. Apple Inc.*,
    523 F. Supp. 3d 1132 (N.D. Cal. 2021) ...............................................................................21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................................20

*Beluca Ventures LLC v. Aktiebolag*,
    622 F. Supp. 3d 806 (N.D. Cal. 2022) .................................................................................12

*Big Red Box, LLC v. Square, Inc.*,
    No. 18 Civ. 758, 2020 WL 465928 (D.S.C. Jan. 22, 2020)...................................................12

*Blue Wing Airlines Fin. v. Unical Aviation, Inc. & Platinum Equity*,
    No. 22 Civ. 02052, 2023 WL 3149276 (C.D. Cal. Mar. 8, 2023) .........................................17

*Caraccioli v. Facebook, Inc.*,
    167 F. Supp. 3d 1056 (N.D. Cal. 2016) ...............................................................................10

*Chen v. PayPal, Inc.*,
    61 Cal. App. 5th 559 (2021) ...............................................................................................12

*City of Portland v. HomeAway.com, Inc.*,
    240 F. Supp. 3d 1099 (D. Or. 2017) ................................................................................8, 13

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) .................................................................................................8

*ESG Cap. Partners, LP v. Stratos*,
    828 F.3d 1023 (9th Cir. 2016) .............................................................................................17

*Fortaleza v. PNC Financial Services Group, Inc.*,
    642 F. Supp. 2d 1012 (N.D. Cal. 2009) ...............................................................................11

*Gardner v. Safeco Ins. Co. of Am.*,
    No. 14 Civ. 02024, 2014 WL 2568895 (N.D. Cal. June 6, 2014) .........................................17

*Guzman v. Bridgepoint Educ., Inc.*,
  No. 11 Civ. 69, 2012 WL 1944822 (S.D. Cal. May 30, 2012) ................................14

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ..............................................................17

*Hameed v. IHOP Franchising LLC*,
  520 F. App'x 520 (9th Cir. 2013) ........................................................................18

*Hardin v. Bank of America*,
  No. 22 Civ. 10023, 2022 WL 3568568 (E.D. Mich. Aug. 18, 2022) ....................20

*Horne v. Flores*,
  557 U.S. 433 (2009) .............................................................................................7

*Javier v. Assurance IQ, LLC*,
  No. 20 Civ. 02860, 2023 WL 114225 (N.D. Cal. Jan. 5, 2023) ...........................21

*Jay v. Serv. Emps. Int'l Union-United Health Care Workers W.*,
  203 F. Supp. 3d 1024 (N.D. Cal. 2016) ..............................................................11

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ..............................................................................8

*Klein v. Chevron U.S.A., Inc.*,
  202 Cal. App. 4th 1342 (2012) ............................................................................18

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) .............................................................................................7

*Lansdown v. Bayview Loan Servicing, LLC*,
  No. 22 Civ. 00763, 2023 WL 411348 (N.D. Cal. 2023) .........................................9

*Lomboy v. SCME Mortg. Bankers*,
  No. 09–1160, 2009 WL 1457738 (N.D. Cal. May 26, 2009) ...............................10

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .............................................................................................7

*M.S. v. Brown*,
  902 F.3d 1076 (9th Cir. 2018) ..............................................................................8

*Marolda v. Symantec Corp.*,
  672 F. Supp. 2d 992 (N.D. Cal. 2009) ................................................................15

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) ................................................................................8

*Nguyen v. Stephens Inst.*,
  529 F. Supp. 3d 1047 (N.D. Cal. 2021) ........................................................12, 13

*Nool v. HomeQ Servicing*,
    653 F. Supp. 2d 1047 (E.D. Cal. 2009)................................................................12

*Olen v. N. Tier Retail, LLC*,
    No. Civ. 11-2665, 2012 WL 1580994 (D. Minn. May 4, 2012)..........................19

*Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*,
    307 F.3d 944 (9th Cir. 2002) ...............................................................................11

*Philips v. Ford Motor Co.*,
    No. 14 Civ. 02989, 2015 WL 4111448 (N.D. Cal. July 7, 2015)....................15, 17

*Protégé Rest. Partners LLC v. Sentinel Inc. Co., Ltd.*,
    517 F. Supp. 3d 981 (N.D. Cal. 2021) ................................................................21

*Santana Row Hotel Partners, L.P. v. Zurich Am. Ins. Co.*,
    446 F. Supp. 2d 1108 (N.D. Cal. 2006) ..............................................................13

*Shawmut Worcester Cnty. Bank v. First Am. Bank & Trust*,
    731 F. Supp. 57 (D. Mass. 1990) ...................................................................19, 20

*Shulman v. Kaplan*,
    58 F.4th 404 (9th Cir. 2023) ..................................................................................8

*Stock v. Firstmark Serv.*,
    No. 18 Civ. 01363, 2018 WL 8193373 (C.D. Cal. Dec. 12, 2018) ......................20

*Truxel v. Gen. Mills Sales, Inc.*,
    No. 16 Civ. 04957, 2019 WL 3940956 (N.D. Cal. Aug. 13, 2019).......................14

*Watkins v. MGA Ent., Inc.*,
    550 F. Supp. 3d 815 (N.D. Cal. 2021) ......................................................14, 15, 16

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ................................................................................7

*Zepeda v. PayPal, Inc.*,
    777 F. Supp. 2d 1215 (N.D. Cal. 2011) ..........................................................11, 18

*Zepeda v. PayPal Inc.*,
    No. 10 Civ. 2500, 2017 WL 1113293 (N.D. Cal. March 24, 2017) ......................19

**Statutes**

15 U.S.C. § 1693f ........................................................................................................19

Cal. Bus. and Prof. Code § 17200.................................................................................15

Cal. Civ. Code § 1770(a) .......................................................................................14, 15

**Other Authorities**

12 C.F.R. § 1005.2 (2019) ...............................................................................................................19

12 C.F.R. § 1005.11(a)(1) (2019) ...................................................................................................20

31 C.F.R. § 501.801 (2019) ..............................................................................................................9

31 C.F.R. § 587.201 (2022) .....................................................................................................4, 9, 16

31 C.F.R. § 587.202 (2022) .........................................................................................................2, 9

31 C.F.R § 587.311 (2022) ...............................................................................................................6

Fed. R. Civ. Proc. 12...............................................................................................................2, 3, 7

Fed. R. Civ. Proc. 9..........................................................................................................................8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants empower businesses and sellers to participate in the economy via its product Square, which enables merchants to accept card payments.[1] Defendants interface with, and have a contractual relationship with, merchants. In turn, these merchants transact with their customers. Plaintiff Maria Zurabova seeks to sue Defendants, which provided payment processing services to a merchant from whom Plaintiff sought to purchase jewels, for complying with their own stated policies—and with federal sanctions law—by flagging a series of transactions for the merchant for investigation of unusual activity and ultimately freezing the flagged funds that Plaintiff attempted to transmit from a sanctioned Russian bank. Although she has no direct relationship with Square, Plaintiff concedes that, by choosing to purchase goods from a merchant using Defendants' payment processing services, she became bound by Defendants' terms of service, which expressly authorize Defendant to take the actions it took. Although Plaintiff may not like the outcome, she does not dispute that Defendants' actions were consistent with these policies and with federal law, which prohibits Defendants from transferring funds from the bank at issue to this day. Because Plaintiff does not and cannot allege that Defendants (1) deviated from their policies or legal requirements in any way or (2) made any false or misleading representation to Plaintiff, her complaint must be dismissed.

In March 2022, amidst Russia's burgeoning war against Ukraine and increasing federal sanctions against Russian financial institutions, Plaintiff sought to purchase more than half a million dollars' worth of jewels from a U.S. merchant, using funds from multiple Russian bank accounts associated with six different names. Specifically, over the course of three days, via at least 28 separate transactions, Plaintiff sought to purchase $645,083 worth of loose diamonds, gemstones, and diamond jewelry. To fund these purchases, she produced ten different debit cards belonging to six different people, including herself, each linked to Russia's largest private bank, Alfa-Bank. At the merchant's direction, Plaintiff used payment processing services operated by

---

[1] As alleged in the First Amended Complaint, Defendants are Block, Inc., Square Capital, LLC, and Square Financial Services, Inc., collectively, "Defendants" or "Square."

Defendants to process her attempted transactions. In accordance with their publicly available terms of service—which Plaintiff alleges apply to her transactions and incorporates by reference into her complaint, but to which she is not a party—Defendants held the funds in order to investigate the unusual transaction activity, including the fact that Plaintiff was attempting to complete a large purchase via smaller incremental payments coming from multiple sources. Less than a month after Plaintiff attempted her transactions, while Defendants' investigation was ongoing, on April 6, 2022, United States Department of Treasury Office of Foreign Assets Control ("OFAC") issued full blocking sanctions against Alfa-Bank, prohibiting any person or entity from withdrawing, transferring, or moving any funds sourced from Alfa-Bank. As a result of the OFAC sanctions, which remain in effect today, Defendants are not legally able to return funds to Plaintiff absent a license from OFAC, which Plaintiff does not allege she ever sought to obtain despite being placed on notice of that remedy by the merchant as of December 16, 2022, at latest. Dkt. 16 ¶¶ 27, 30.

Instead of following the only proper channel to seek the release of her funds from the government, Plaintiff now asks this Court to grant relief that the law does not permit, demanding the return of her funds based on a variety of contract, tort, and statutory claims in an attempt to circumvent both Defendants' terms and conditions—which provide that the use of Defendants' services is conditioned on Defendants' right to flag and investigate suspicious transactions exactly like Plaintiff's—and federal law, which prevents Defendants from transferring the sanctioned funds. Indeed, Plaintiff's own allegations and the documents she attaches to the complaint demonstrate that all of her claims fail as a matter of law. Dismissal of the First Amended Complaint ("FAC") is warranted on at least two independent grounds:

(1) Plaintiff lacks Article III standing because she cannot demonstrate that her injuries are judicially redressable in light of the regulatory prohibition on the transfer of the funds at issue. Any order requiring Defendants to remit to Plaintiff the funds she attempted to transfer to the merchant would run afoul of duly issued regulations and sanctions promulgated by the United States government. 31 C.F.R. § 587.202 (2022). Because the relief that Plaintiff demands is beyond this Court's authority to order, this entire action must be dismissed for lack of standing. *See* Fed. R. Civ. Proc. 12(b)(1).

(2) Even absent the statutory prohibition on transfer, Plaintiff's complaint fails to state a claim because she does not identify any wrongdoing by Defendants. The FAC is not only silent as to what contractual provision or promise Defendants allegedly breached, or what misleading or fraudulent statements Defendants allegedly uttered on which Plaintiff relied when initiating her transactions; it alleges facts to the contrary. The crux of Plaintiff's claims is that Defendants were not authorized to hold the funds pending its investigation into the transactions—but the very terms and conditions under which Plaintiff sues expressly permit just that. Further, Plaintiff concedes that the merchant, rather than Defendants, induced her to use Defendants' payment processing services and that Defendants never made any representations to her directly until *after* she decided to use the services. As Plaintiff herself alleges, the only representations Defendants made *prior* to the attempted transactions were contained in Defendants' terms of service, which placed the public on notice of Defendants' right to hold funds pending investigations and/or in compliance with applicable laws. Plaintiff alleges no facts to suggest that Defendants did anything but follow their own policies. Because Plaintiff does not and cannot allege facts to establish every required element to every asserted claim, her complaint must all be dismissed in its entirety for this independent reason. *See* Fed. R. Civ. Proc. 12(b)(6).

Moreover, further amendment should be denied as futile. There simply are no facts that can be alleged to establish Plaintiff's Article III standing or rehabilitate her claims.

## II.     RELEVANT BACKGROUND

### A.     *Factual Background*

#### 1.     Square's POS Services for Merchants

Defendants create tools that empower businesses and sellers to participate in the economy. As relevant to this suit, Block offers the product Square, a cohesive commerce ecosystem that helps merchants start, run, and grow their businesses by enabling them to accept card payments, providing reporting and analytics, and facilitating next-day settlement. Square's point-of-sale ("POS") software, and other business services, help sellers/merchants manage inventory,

locations, and employees; access financial services; engage buyers; build a website or online store; and grow sales.[2] This product is the only one of Defendants' products at issue here.

**2.    Prior to Plaintiff's Transactions, the Federal Government Restricts Transfers of Russian Funds.**

On April 15, 2021, President Biden issued an Executive Order that blocked property with respect to specified foreign activities of the government of the Russian Federation. Defendants' Request for Judicial Notice ("RJN") Ex. B ("E.O. 14024"). In particular, section 1(a)(i) of E.O. 14024 declared that all present and future "property and interests in property" within the United States associated with entities identified by the Secretary of Treasury as having to do with relevant sectors of the Russian Federal economy are "blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in." *Id*.; 31 C.F.R. § 587.201 (2022) (implementing E.O. 14024).

On February 22, 2022, the Secretary of Treasury determined that section 1(a)(i) of EO 14024 applied to the financial services sector of the Russian Federation economy. RJN Ex. A at 2. And on February 24, 2022, OFAC issued a directive, effective March 26, 2022, prohibiting United States persons or persons within the United States from entering into transactions related to the financing or issuing of new debt with Alfa-Bank. *Id.* at 4; *see also* Dkt. 16-6. As discussed below, OFAC would later institute full sanctions blocking all transactions involving Alfa-Bank a few weeks later. *See infra* Section II.A.4.

On March 1, 2022, Russian President Vladimir Putin signed an executive order restricting transactions between Russian entities and foreign nationals connected to countries, including the United States, that had imposed economic restrictions on Russia. *See* RJN Ex. E. That order introduced "a ban on the movement of currency in cash exceeding the equivalent of $10,000 out of the Russian Federation." *Id.* On March 5, 2022, Visa suspended Russian operations, blocking transactions initiated with Visa cards issued in Russia. RJN Ex. F.

---

[2] Square Capital LLC (a subsidiary of Block, Inc.) provides, for example, loan offerings to help sellers/merchants grow their business, and also provides a convenient repayment plan, which occurs automatically as a fixed percentage of the merchant's daily card sales. In comparison, Square Financial Services, Inc. (also an independently governed subsidiary of Block, Inc.) specifically offers business loan and deposit products for Square POS sellers/merchants.

### 3. Plaintiff Initiates 28 Transactions with a Square Merchant Using Ten Different Debit Cards in Six Different Names.

Over the course of three days beginning on March 7, 2022, Plaintiff initiated purchases of $645,083 worth of loose diamonds, gemstones, and diamond jewelry, from a jeweler located in New York City's Diamond District. Dkt. 16 ¶¶ 11, 15; Dkt. 16-3; Dkt. 16-4. Plaintiff attempted to make at least 28[3] separate transactions for these purchases, *using ten different Visa debit cards belonging to six different people*, including herself. Dkt. 16 ¶¶ 15, 16 n.1; Dkt. 16-3; Dkt. 16-4. Every card used by Plaintiff was linked to a Russian bank account at Alfa-Bank. *See id.* ¶¶ 19, 30–31. The majority of Plaintiff's invoices were rounded to the nearest hundred dollar. Dkt. 16-3; Dkt. 16-4. Plaintiff alleges that she used Defendants' payment processing services to process each transaction at the direction of the merchant. Dkt. 16 ¶ 12.

### 4. Defendants Flag Plaintiff's Transactions for Investigation Pursuant to Their Terms.

In light of Plaintiff's unusual transaction activity,[4] Defendants held the funds for investigation, noting in a communication with its customer, the merchant, "Multiple unique payment cards and zip codes were attempted when paying this invoice. This is unusual behavior . . . ." Dkt. 16 ¶ 16; Dkt. 16-4 at 23. Defendants did so pursuant to their General Terms of Service ("General Terms"), which Plaintiff alleges governs her transactions. Dkt. 16 ¶ 8; Dkt. 16-1.

The General Terms incorporate by reference Defendants' Payment Terms ("Payment Terms," and together with the General Terms, the "Terms"). Dkt. 16-1 at 3, 14, 17. The Payment Terms expressly state:

---

[3] Plaintiff's exhibits attaching the relevant invoices appear incomplete—for example, she attaches invoices 3, 4, 5, 6, 7, and 8 for a "13.37 Carat GIA Certified Natural Diamond Investment Grade" but does not attach invoices 1 or 2. Dkt. 16-4 at 25–30.

[4] In the funds transfer context, for example, the Federal Financial Institutions Examination Council states that the following transaction characteristics are "potentially suspicious" and "may indicate money laundering": (1) "[m]any funds transfers sent in large, round dollar, hundred dollar, or thousand dollar amounts"; (2) "[f]unds transfer activity occurs . . . from a financial institution located in a higher risk jurisdiction distant from the customer's operations"; (3) "[f]unds transfers are sent or received from the same person to or from different accounts"; or (4) "[p]ayments for goods or services are made by checks, money orders, or bank drafts not drawn from the account of the entity that made the purchase." RJN Ex. G. Plaintiff's transactions had all of these characteristics.

> We may defer payout or restrict access to your Proceeds if we need to conduct an investigation or resolve any pending dispute related to your use of the Services, or in accordance with our Terms. We also may defer payout or restrict access to your Proceeds as necessary to comply with applicable law or court order, or if requested by any governmental entity.

RJN Ex. C § 12. The Payment Terms also state:

> We [. . .] may decline to authorize or settle any transaction [. . .] if we believe that the transaction is in violation of these terms or any other agreement with Square, or that it exposes you, your customers, other Square Sellers, our processors or Square to harm. Harm includes fraud and other criminal acts.

*Id.* § 23.

### 5.   Shortly After Plaintiff's Transactions, the Funds Become Subject to Federal Sanctions.

On March 26, 2022, OFAC's directive prohibiting persons within the United States from entering into transactions related to the financing or issuing of new debt with Alfa-Bank went into effect. *See* RJN Ex. A at 4. Shortly thereafter, on April 6, 2022, OFAC escalated the sanctions against Alfa-Bank by imposing full blocking restrictions pursuant to E.O. 14024. RJN Ex. D at 5 (imposing "full blocking restrictions on Joint Stock Company Alfa-Bank (Alfa Bank)," effective April 6, 2022). In so doing, OFAC blocked "***all*** property within the possession or control of any United States person" of Alfa-Bank. RJN Ex. A at 1 (emphasis added). These sanctions, which apply equally to funds from Alfa-Bank "in the United States," prohibited, and continue to prohibit, Defendants from "transferr[ing], pay[ing], export[ing], withdraw[ing], or otherwise deal[ing] in" the amounts Plaintiff had transmitted from Alfa-Bank accounts. RJN Ex. B; 31 C.F.R § 587.311 (2022) (defining property blocked by E.O. 14024 to include "money" and "other financial instruments").

Defendants advised the merchant of these restrictions barring Defendants from further processing or transferring the funds. Dkt. 16 ¶ 22; Dkt. 16-5 at 1. Defendants also advised the merchant of the option to file "an application for the release of blocked funds" from OFAC, which would enable Defendants to process the funds. *See* Dkt. 16-5. Plaintiff's complaint acknowledges that the merchant passed this communication along to her but is silent as to whether she ever

applied for the release of her funds. Plaintiff does not allege, nor is it the case, that Defendants were under any obligation to seek the release of the funds on Plaintiff's or the merchant's behalf. Defendants have placed the funds into a segregated account consistent with OFAC requirements.

**B.      Procedural History**

Plaintiff initiated this action on March 3, 2023, Dkt. 1, and filed the operative FAC on May 1, 2023. Dkt. 16.

The FAC asserts eight causes of action against Defendants: (1) conversion; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) promissory estoppel; (5) breach of the California Consumer Legal Remedies Act ("CLRA"); (6) unlawful and unfair business practices; (7) unjust enrichment; and (8) violation of the Electronic Funds Transfer Act ("EFTA"). All of Plaintiff's claims are premised on Defendants' holding of her funds, which Plaintiff contends must be returned to her.

## III.   LEGAL STANDARD

Challenges to Article III standing implicate a court's subject matter jurisdiction and are properly raised under Rule 12(b)(1). Whether Plaintiff has standing to sue under Article III is a threshold issue that must be addressed before turning to the merits. *See Horne v. Flores*, 557 U.S. 433, 445 (2009). "The party invoking federal jurisdiction bears the burden of establishing [the elements of standing]." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "Federal courts are courts of limited jurisdiction," and "[i]t is to be presumed that a cause lies outside this limited jurisdiction" unless otherwise shown. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When considering a 12(b)(1) jurisdictional attack, "a court may look beyond the complaint" and "need not presume the truthfulness of the plaintiffs' allegations." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citing 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.30[4], at 12–38 (3d ed. 1999).

To survive a motion to dismiss under Rule 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is plausible when the facts alleged permit "the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* Courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Thus, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014) (facts that are merely consistent with plaintiff's favored explanation are not enough; "[s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. Likewise, where a plaintiff's allegations contradict documents referenced in the complaint, a court need not accept those allegations as true. *City of Portland v. HomeAway.com, Inc.*, 240 F. Supp. 3d 1099, 1111 (D. Or. 2017).

In addition, Rule 9(b) imposes a heightened pleading standard whenever a plaintiff alleges fraud. The plaintiff must "state with particularity the circumstances constituting fraud" by identifying "the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009).

## IV.   PLAINTIFF LACKS STANDING TO SUE DEFENDANTS BECAUSE HER ALLEGED INJURY CANNOT BE REDRESSED BY JUDICIAL RELIEF.

To establish Article III standing, Plaintiff must show that she suffered an injury in fact, that the injury was likely caused by the defendants, *and* that the injury would likely be redressed by judicial relief. *See Shulman v. Kaplan*, 58 F.4th 404, 408 (9th Cir. 2023) (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021)). "Redressability invokes the separation of powers, asking whether the remedial action requested is committed to the judicial branch." *Shulman*, 58 F.4th at 409 (quotation marks omitted). An injury is not judicially redressable if the remedy requested is "beyond the district court's remedial power to issue." *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018).

Here, Plaintiff's injury is not subject to judicial redress. Plaintiff seeks an order from the Court enjoining Defendants "from retaining the Funds" and requiring that Defendants "promptly remit the Funds to Zurabova." Dkt. 16 at 13. Such an order would plainly run afoul of OFAC's existing requirement that all property of Alfa-Bank within the United States is fully blocked and may not be transferred or dealt with by anyone. RJN Ex. B, RJN Ex. D. Indeed, the OFAC regulations expressly state that the sanctions as to Alfa-Bank may not be circumvented by judicial orders: "Unless licensed pursuant to this part, any . . . judicial process is null and void with respect to any property or interest in property blocked pursuant to § 587.201." 31 C.F.R. § 587.202 (2022).[5]

Accordingly, the judicial order that Plaintiff seeks in this action—an order compelling Defendants to remit to Plaintiff property blocked pursuant to OFAC sanctions—cannot be issued without violating federal regulations and would be "null and void." *Id.* The relief Plaintiff seeks is firmly committed to the executive branch and not available through court action: as her own documentation shows, the proper recourse is for Plaintiff to apply for an application for the release of blocked funds through OFAC. Dkt. 16-5 (email from Square to merchant stating, "Information regarding OFAC and filing an application for the release of blocked funds can be found at [website link]"). Plaintiff's injury is, therefore, not subject to judicial redress, and this action must be dismissed for lack of standing.

## V.   THE FAC FAILS TO STATE ANY CLAIM FOR RELIEF.

### A.   Plaintiff Fails to Allege Breach of Contract or of the Implied Covenant of Good Faith and Fair Dealing Because the Defendants' Terms Expressly Authorized the Conduct at Issue.

The elements of a cause of action for breach of contract are (1) the existence of the contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages. *Lansdown v. Bayview Loan Servicing, LLC*, No. 22 Civ. 00763, 2023 WL 411348, at *4 (N.D. Cal. 2023). Further, a plaintiff must "identify the specific provision of the contract

---

[5] To be clear, in accordance with this regulation, only OFAC can grant Plaintiff the relief she seeks. *See* 31 C.F.R. § 501.801 (2019) (describing process by which OFAC grants general and special licenses). No federal or state court or other tribunal can provide such relief. *Id.* § 587.202

allegedly breached by the defendant." *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016). Here, Plaintiff's breach of contract claim against Defendants fails for at least two reasons.

*First*, Plaintiff cannot establish a breach of contract claim against Defendants because no contractual relationship existed between them. Evident from the General Terms attached to the FAC on which Plaintiff's breach of contract claim is based, these terms govern Defendants' relationship with *merchants* who have registered and "open[ed] an account with" Defendants. Dkt. 16-1 §§ 1, 17 ("You represent and warrant to us that . . . you are eligible to register and use the Services"). Plaintiff—the would-be customer of a merchant—does not allege that she ever registered or had an account for Defendants' services. Because Plaintiff is not a party to the General Terms and identifies no other contract with Defendants, she cannot assert a viable claim for breach of contract. *See Lomboy v. SCME Mortg. Bankers*, No. 09–1160, 2009 WL 1457738, at *5 (N.D. Cal. May 26, 2009) (dismissing breach of contract claim against loan servicer on the grounds that no contractual relationship exists between a borrower and a loan servicer).

*Second*, even if Plaintiff were a party to the General Terms, she identifies no contractual provision that Defendants allegedly breached. This failure also warrants dismissal. *Caraccioli*, 167 F. Supp. 3d at 1064 ("To properly plead breach of contract, the complaint must identify the specific provision of the contract allegedly breached by the defendant.") (quotation marks, alteration, and citation omitted). Notably, Plaintiff's conclusory allegation that Defendants breached the General Terms by "failing to transfer the Funds to the Merchant and also refusing to refund the Funds to Zurabova," ignores that no provision in the terms obligates Defendants to do so. Dkt. 16, ¶ 47. Plaintiff certainly identifies none. To the contrary, the Terms on which Plaintiff relies expressly authorized Defendants to "defer payout" and "restrict access" to the merchant's funds while they conducted an investigation in response to the unusual activity, and later in order "to comply with applicable law"—*i.e.*, OFAC sanctions as to funds from Alfa-Bank. RJN Ex. C § 12; Dkt. 16-1 § 3.2.

In the absence of any contractual relationship, or any breach by Defendants of any contractual term, Plaintiff's breach of contract claim fails and must be dismissed.

Plaintiff's good faith and fair dealing claim fails for the same reasons as—and is duplicative of—her breach of express contract claim. Under California law, a claim for good faith and fair dealing "may be disregarded as superfluous" if it restates the allegations underlying a cause of action for breach of contract. *Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1221 (N.D. Cal. 2011). The elements of a cause of action for breach of the covenant of good faith and fair dealing are "the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from the contract." *Fortaleza v. PNC Financial Services Group, Inc.*, 642 F. Supp. 2d 1012, 1021–22 (N.D. Cal. 2009). In California, generally there *must* also be "a 'special relationship' with 'fiduciary characteristics.'" *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002) (quoting *Mitsui Mfrs. Bank v. Superior Court*, 212 Cal. App. 3d 726, 730 (1989)). As a result, "the implied covenant tort is not available to parties of an ordinary commercial transaction where the parties deal at arms' length." *Id.* Much like Plaintiff's breach of contract claim, this claim also fails as a matter of law on multiple grounds.

*First*, as stated above, Plaintiff's good faith and fair dealing claim fails because no contractual obligation exists between Defendants and Plaintiff. *Jay v. Serv. Emps. Int'l Union-United Health Care Workers W.*, 203 F. Supp. 3d 1024, 1034 (N.D. Cal. 2016) ("Under California law, a claim for breach of this implied covenant [of good faith and fair dealing] is necessarily based on the existence of an underlying contractual relationship[.]").

*Second*, Plaintiff's good faith and fair dealing claim must be dismissed as superfluous. Her allegations supporting this claim are the same as those supporting her breach of contract claim. *Compare* Dkt. 16 ¶¶ 44–48, *with* Dkt. 16 ¶¶ 49–53. Under California law, this claim "may be disregarded as superfluous as no additional claim is actually stated." *Zepeda*, 777 F. Supp. 2d at 1221 ("If the allegations in a breach of implied covenant claim do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.").

*Third*, even if the Court were to entertain her good faith and fair dealing claim, it still fails because Plaintiff does not (and cannot) allege that Defendants owed her a fiduciary duty. *See* Dkt.

16. No business relationship existed between them, let alone a fiduciary one. *See Nool v. HomeQ Servicing*, 653 F. Supp. 2d 1047, 1056 (E.D. Cal. 2009) ("As a general rule, a financial institution owes no duty of care to a borrower where the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a lender of money."); *Big Red Box, LLC v. Square, Inc.*, No. 18 Civ. 758, 2020 WL 465928, at *3 (D.S.C. Jan. 22, 2020), *report and recommendation approved*, 2020 WL 5545283 (D.S.C. Sept. 16, 2020) (holding that no fiduciary relationship existed between Square, Inc. and a limited liability company that used its services as a merchant).

Because there are no factual allegations available that could establish a viable claim for breach of good faith and fair dealing against Defendants, the claim must be dismissed.

**B.     Plaintiff's Conversion Claim Fails Because She Assented to the Transactions.**

The elements of a cause of action for conversion are "(1) ownership or right to possession of the property; (2) wrongful disposition of the property right; and (3) damages." *Beluca Ventures LLC v. Aktiebolag*, 622 F. Supp. 3d 806, 814 (N.D. Cal. 2022). However, "[a] plaintiff may not ordinarily recover for the tort of conversion for the breach of duties that merely restate contractual obligations." *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1058 (N.D. Cal. 2021). Further, "the law is well settled that there can be no conversion where an owner either expressly or impliedly assents to or ratifies the taking, use or disposition of his property." *Chen v. PayPal, Inc.*, 61 Cal. App. 5th 559, 576 (2021).

Here, Plaintiff's admission that she assented to the transactions precludes her from asserting a claim for conversion against Defendants. According to Plaintiff, "the Merchant directed [her] to use Square's payment processing services," and she voluntarily used these services, which placed her funds into Defendants' custody. Dkt. 16 ¶¶ 12, 15–16. Additionally, she alleges that her claim is governed by the Terms, *see, e.g.*, Dkt. 16 ¶¶ 8, 10, 12; Dkt. 16-1 at 3, 14, 17, which expressly authorized Defendants to hold funds and decline to settle a transaction—even indefinitely—in order to investigate or as needed to comply with applicable law. RJN Ex. C §§ 12, 23; Dkt. 16-1 § 3.2. As a matter of law, Plaintiff's voluntary decision to initiate transactions to transfer Russian funds to Defendants, particularly when on notice of these provisions, precludes her from asserting a claim for conversion. *Chen*, 61 Cal. App. 5th at 576 (affirming dismissal of

the complaint because appellants cannot "frame PayPal's practice [of retaining interest] as 'conversion' of their funds" because they assented to the taking "by having consented to the user agreement, which expressly assigns any interest on the pooled funds to PayPal").[6]

**C.    Plaintiff's Promissory Estoppel Claim Fails Because Defendants Made No Promise to Permit—and Expressly Reserved the Right to Defer or Restrict—Plaintiff's Transactions.**

The elements of a cause of action for promissory estoppel are "(1) a promise clear and unambiguous in its terms[;] (2) reliance by the party to whom the promise is made[;] (3) the reliance must be both reasonable and foreseeable[;] and (4) the party asserting estoppel must be injured by his reliance." *Santana Row Hotel Partners, L.P. v. Zurich Am. Ins. Co.*, 446 F. Supp. 2d 1108, 1113 (N.D. Cal. 2006). Plaintiff, however, does not and cannot allege facts to establish these required elements.

Preliminarily, Plaintiff fails to allege any promise—let alone a "clear and unambiguous" promise—that Defendants made to her. To the contrary, Plaintiff's vague allegations that Defendants "implicitly or explicitly promised" to transfer funds to the merchant and/or return the funds to Plaintiff are wholly negated by the documents attached to the FAC: Defendants clearly and unambiguously put Plaintiff on notice that they would defer payment and would *not* fulfill a transaction if an investigation is necessary or in order to comply with applicable laws. RJN Ex. C §§ 12, 23; *see also* Dkt. 16-1. Plaintiff's allegations must be disregarded because they are negated by the very documents on which she relies. *City of Portland*, 240 F. Supp. 3d at 1111.

Relatedly, Plaintiff's supposed reliance on unarticulated promises was neither reasonable nor foreseeable. At the time she initiated the transactions, Plaintiff had notice of Defendants' Terms—including that they retained the right to defer payout or restrict access to funds if an

---

[6]   Should the Court find that Plaintiff has adequately pled a breach of contract claim notwithstanding the absence of a contractual relationship or Defendants' breach of any contractual terms, the conversion claim fails for the added reason that it mirrors her claim that Defendants breached their contractual obligations to her: "Square breached those contracts by failing to transfer the Funds to the Merchant and also refusing to refund the Funds to Zurabova." Dkt. 16 ¶ 47. Plaintiff cannot "recover for the tort of conversion for the breach of duties that merely restate contractual obligations." *Nguyen*, 529 F. Supp. 3d at 1058

investigation was necessary or in order to comply with the law. Plaintiff's decision to proceed with her transactions despite this express notice from Defendants wholly negates her promissory estoppel claim.

### D. Plaintiff's CLRA Claim Fails Because She Identifies No False or Misleading Statements by Defendants.

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any customer." Cal. Civ. Code § 1770(a). In order to be actionable, "a plaintiff must allege that the alleged false and misleading statements were 'likely to deceive a reasonable consumer.'" *Truxel v. Gen. Mills Sales, Inc.*, No. 16 Civ. 04957, 2019 WL 3940956, at *3 (N.D. Cal. Aug. 13, 2019) (*quoting Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). Moreover, CLRA claims that "sound in fraud . . . must be pled with particularity . . . [and] must allege specific facts showing that [the plaintiff] relied on the alleged misrepresentations or omissions." *Watkins v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 833 (N.D. Cal. 2021). Plaintiff's CLRA claim fails as a matter of law for several reasons.

*First*, the CLRA prohibits an enumerated list of conduct, ranging from "[a]dvertising goods or services with intent not to sell them as advertised" to "[a]dvertising furniture without clearly indicating that it is unassembled if that is the case[.]" *See* Cal. Civ. Code § 1770(a). As is evident from Plaintiff's silence in the FAC, none of the enumerated acts apply to Defendants' alleged conduct. Plaintiff's failure to identify which statutory section of the CLRA Defendants allegedly violated warrants dismissal of her CLRA claims. *Guzman v. Bridgepoint Educ., Inc.*, No. 11 Civ. 69, 2012 WL 1944822, at *8 (S.D. Cal. May 30, 2012) (dismissing CLRA claims where "[t]he Complaint does not identify the particular sections of CLRA that Plaintiff alleges have been violated").

*Second*, Plaintiff identifies no false and misleading statements by Defendants that could give rise to a CLRA claim. Tellingly, Plaintiff does not identify *any* advertisements or statements by Defendants—made directly to her or otherwise—that she alleges were unfair or deceptive. Plaintiff likewise does not allege that any statement by Defendants induced her to use their

services. Indeed, she concedes that "the **Merchant** directed [her] to use Square's payment processing services." Dkt. 16 ¶ 12 (emphasis added). While Plaintiff asserts that Defendants' statement "that Alfa Bank was sanctioned and that therefore it could not process Zurabova's purchase of Merchandise" was false and misleading, *id.*, ¶ 23, this alleged statement cannot form the basis of her CLRA claim. This statement is true, and, even if it had been expressed to her—it was not, *see* Dkt. 16-5 (reflecting message from Defendants to the merchant)—it was conveyed well *after* Plaintiff initiated the transactions; in no way could such statements have induced her to use Defendants' services weeks before. Because the CLRA prohibits acts or practices "***intended to result or which results in the sale or lease of goods or services to any customer***," her allegations fall outside the scope of the CLRA. Cal. Civ. Code § 1770(a) (emphasis added).

*Third*, to the extent Plaintiff belatedly contends that her CLRA claim is premised on fraudulent conduct by Defendants, that assertion must be rejected out of hand. *Watkins*, 550 F. Supp. 3d at 833. Nowhere in the FAC does Plaintiff plead, let alone support with factual allegations sufficient to satisfy the heighted pleading standard, any fraudulent conduct or statements by Defendants. She likewise cannot demonstrate her reliance on such nonexistent fraud. Dkt. 16 ¶ 12.

Plaintiff fails to state a CLRA claim against Defendants, so it must be dismissed.

### E.   Plaintiff's UCL Claim Fails Because She Alleges No Misconduct.

To plead a claim for unlawful and unfair business practices under California's Unfair Competition Law ("UCL"), the plaintiff must allege that (1) defendant engaged in an "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising"; and (2) plaintiff was injured as a result. Cal. Bus. and Prof. Code § 17200 *et seq.*; *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1003 (N.D. Cal. 2009). UCL claims that "sound in fraud . . . must be pled with particularity . . . [and] must allege specific facts showing that [the plaintiff] relied on the alleged misrepresentations or omissions." *Watkins*, 550 F. Supp. 3d at 833. Further, the UCL only provides plaintiffs with equitable remedies of restitution or injunctive relief. *Philips v. Ford Motor Co.*, No. 14 Civ. 02989, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015). In California, a plaintiff seeking equitable relief must establish that there is no adequate remedy at law available. *Id.* Otherwise, dismissal of the pled UCL claim is warranted. *Id.* ("As the UCL

provides only equitable remedies . . . and California [p]laintiffs have an adequate remedy at law in the form of their claim for fraudulent concealment, the Court dismisses California [p]laintiffs' UCL claims.") (citation omitted).

Here, Plaintiff's threadbare and conclusory allegations—that through unspecified "actions and omissions," Defendants have "willfully and knowingly engaged in fraudulent, deceptive, unlawful, unfair, and/or other wrongful acts and practices," Dkt. 16, ¶¶ 66–67—fall woefully short of articulating a valid UCL claim. *Iqbal*, 556 U.S. at 677–78. While Plaintiff does not specify what conduct by Defendants underlies the UCL claim, the *only* alleged conduct by Defendants that preceded her supposed injury was that Plaintiff willingly provided funds to a merchant that used Defendants' card processing services, which came from Russian accounts that were ultimately subject to sanctions. Dkt. 16, ¶¶ 19–24. As a matter of law, that conduct cannot form the basis of a UCL claim.

*First*, Defendants' holding of funds simply violates no law. Plaintiff tacitly concedes as much given her failure to identify any applicable law or regulation that was breached. Indeed, by holding the funds, Defendants are *complying* with federal law: these funds are subject to OFAC sanctions, and Defendants *cannot* transfer them to anyone—Plaintiff, the merchant, or anyone else. *See* RJN Ex. D; 31 C.F.R. § 587.201. Plaintiff therefore cannot premise her UCL claim on the "unlawful" prong.

*Second*, any purported claim under the UCL for fraudulent business practices also fails, given the complete absence of any factual allegations suggesting deception by Defendants, or reliance by Plaintiff. *Watkins*, 550 F. Supp. 3d at 833; *see also In re Actimmune Mktg. Lit.*, No. 08 Civ. 02376, 2009 WL 3740648, at *14 (N.D. Cal. Nov. 6, 2009) (dismissing plaintiffs' claims under the UCL fraudulent prong for failing to plead fraudulent conduct with sufficient specificity). Further, the allegations pled by Plaintiff conclusively negate any UCL claim under the "fraud" prong. Plaintiff was on notice at the time she initiated the transactions that Defendants may defer payout, restrict access to funds, or decline to settle transactions if Defendants needed to conduct an investigation and/or comply with laws, which is precisely what happened. RJN Ex. C § 12; Dkt. 16-1 § 3.2. Plaintiff is bound by her admission that she was induced by the merchant, not

Defendants, to initiate the transactions using Defendants' payment processing system. Dkt. 16, ¶ 15. Plaintiff does not and cannot allege a UCL claim under the "fraud" prong.

*Third*, "the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017) (collecting cases holding same). Thus, because Plaintiff cannot adequately plead a UCL claim based on unlawful or fraudulent conduct, the UCL claim based on alleged unfairness necessarily fails as well. *Id.*; *see also In re Actimmune Mktg. Lit.*, 2009 WL 3740648, at *14 (dismissing plaintiffs' claims under the unfair prong of the UCL because it wholly overlapped with the failed UCL claim under the fraud prong).

*Finally*, in the event that any of Plaintiff's other pled claims survive the pleading challenge, such claims provide her with an adequate remedy at law, and her UCL claim must be dismissed for this independent reason. *Philips*, 2015 WL 4111448, at *16; *see, e.g.*, *Gardner v. Safeco Ins. Co. of Am.*, No. 14 Civ. 02024, 2014 WL 2568895, at *7–8 (N.D. Cal. June 6, 2014) (dismissing UCL claim where plaintiffs' claims for breach of contract and breach of implied covenants provided an adequate remedy at law).

Plaintiff's failure to allege facts sufficient to articulate a cognizable UCL claim requires dismissal of this cause of action as well.

## F. Plaintiff Cannot Bring an Unjust Enrichment Claim Because She Alleges a Contract Governs the Dispute.

California courts are split as to whether a plaintiff may state an independent cause of action for unjust enrichment. *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *Blue Wing Airlines Fin. v. Unical Aviation, Inc. & Platinum Equity*, No. 22 Civ. 02052, 2023 WL 3149276, at *2 n.2 (C.D. Cal. Mar. 8, 2023) ("[T]he Court follows the more widely accepted principle that there is no separate cause of action for unjust enrichment.").

Where such a cause of action has been held to lie, a claim for unjust enrichment requires Plaintiff to plead and prove (1) receipt of a benefit; and (2) unjust retention of that benefit at the expense of another. *AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 958 (N.D. Cal. 2003). Additionally, a plaintiff may not simultaneously allege that a valid contract exists

between the parties *and* pursue a claim for unjust enrichment. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389 (2012) (affirming dismissal of unjust enrichment claim; "plaintiffs' breach of contract claim pleaded the existence of an enforceable agreement and their unjust enrichment claim did not deny the existence or enforceability of that agreement. Plaintiffs are therefore precluded from asserting a quasi-contract claim under the theory of unjust enrichment."); *Hameed v. IHOP Franchising LLC*, 520 F. App'x 520, 522 (9th Cir. 2013) (citing *Klein*).

Even assuming for purposes of argument that this Court could find that a cause of action for unjust enrichment exists under California law, Plaintiff's allegations that a contract covers the parties' dispute precludes this very claim. Through her breach of contract claim, Plaintiff alleges that she is a party to a valid, written agreement with Defendants—*i.e.*, the General Terms—which Defendants allegedly breached by holding funds for investigation and/or in accordance with the law rather than transmitting the sums to either the merchant or Plaintiff. *See, e.g.*, Dkt. 16 ¶ 8 ("Square's terms of service between Square and Zurabova"), ¶¶ 44–48. Her claim for unjust enrichment seeks relief for the same alleged conduct by Defendants. *See* Dkt. 16 ¶¶ 24, 26, 70–71. Plaintiff, however, cannot have it both ways. Because Plaintiff alleges that a valid contract governs the dispute, her unjust enrichment claim cannot proceed. *Klein*, 202 Cal. App. 4th at 1389.

Moreover, Plaintiff does not and cannot allege that Defendants received any resulting benefit. For example, she does not allege that Defendants used the funds or are earning interest on the funds. *Contra.*, *Zepeda*, 777 F. Supp. 2d at 1223 ("Plaintiffs allege that, as a direct and proximate result of its misconduct, PayPal has been unjustly enriched through its retention of the interest that accrued on Plaintiffs' suspended accounts."). Such allegations would be demonstrably false; as required by the OFAC sanctions, Defendants are restricted from taking such actions with respect to the subject funds.[7] RJN Ex. D at 5.

Absent the necessary factual allegations, Plaintiff fails to adequately plead her unjust enrichment claim and it must be dismissed.

---

[7] Should this action proceed to discovery, the evidence will confirm that, in compliance with OFAC regulations, the funds have been maintained in a segregated account. Defendants have not used or utilized these funds, nor have they received or obtained any benefit from holding them.

### G.   Plaintiff's EFTA Claim Fails Because Defendants Did Not Act as a Financial Institution for Plaintiff and Plaintiff Does Not Allege an Error.

"An EFTA claim should be dismissed when neither the language of the statute nor a provision of Regulation E applies to the defendant's conduct." *Olen v. N. Tier Retail, LLC*, No. Civ. 11-2665, 2012 WL 1580994, at *2 (D. Minn. May 4, 2012). Plaintiff claims that Defendants violated a provision of EFTA that imposes obligations on *financial institutions* regarding *error resolutions*. 15 U.S.C. § 1693f. Plaintiff's EFTA claim fails because she cannot allege that: (1) that Defendants acted as "financial institutions" with respect to providing services to the Plaintiff and the alleged transaction, or (2) Defendants' restriction of the funds was an "error" triggering the EFTA's requirements regarding "error resolution." Defendants' deliberate restriction, for legal and compliance reasons, of funds involved in suspicious transactions is simply not a circumstance to which the EFTA's error resolution provisions apply.

Plaintiff's referenced EFTA provision, 15 U.S.C. § 1693f, and its implementing Regulation E, place certain obligations with respect to error resolution upon a "financial institution," defined as "a bank, savings association, credit union, or any other person that directly or indirectly holds an account belonging to a consumer, or that issues an access device and agrees with a consumer to provide electronic fund transfer services." 12 C.F.R. § 1005.2 (2019); *see also Shawmut Worcester Cnty. Bank v. First Am. Bank & Trust*, 731 F. Supp. 57, 62 (D. Mass. 1990) (recognizing that EFTA does not apply in absence of "financial institution and consumer relationship"). Defendants, which provided third-party payment processing services to the *merchant* with whom Plaintiff sought to transact, *see* Dkt. 16 ¶¶ 10, 40, are not financial institutions with which Plaintiff had a consumer account, nor did they owe Plaintiff any error resolution obligations. *See Zepeda v. PayPal Inc.*, No. 10 Civ. 2500, 2017 WL 1113293, at *11 (N.D. Cal. March 24, 2017) (observing on motion for class settlement that the merits of an EFTA claim against PayPal was "at best, uncertain," in part because EFTA obligations "only apply to a 'financial institution', which PayPal arguably is not"). Plaintiff does not allege that Defendants are banks, savings associations, credit unions, or holders of an account *belonging to her*, or that they issued *her* an access device such as a debit card, to demonstrate the applicability of EFTA to her. *See* RJN Ex. C at § 1 ("We are not a bank and do not offer banking services."); *see Shawmut*, 731 F. Supp. at 62. To the contrary, she alleges that her

interaction with Defendants was by virtue of Defendants' relationship with the *merchant*. Dkt. 16 ¶ 12. And while Plaintiff asserts the legal conclusion, without any supporting facts, that Defendants are "a 'financial institution' under EFTA" who owed her error resolution obligations, Dkt. 16 ¶¶ 75–76, this is not a well-pled factual allegation entitled to any deference on a motion to dismiss. *Twombly*, 550 U.S. at 550. Because Plaintiff does not and cannot establish that Defendants owed her any error resolution obligations under EFTA, this claim must be dismissed. *See Stock v. Firstmark Serv.*, No. 18 Civ. 01363, 2018 WL 8193373 (C.D. Cal. Dec. 12, 2018) (dismissing EFTA claim because plaintiff failed to allege that defendant was "financial institution" where it did not hold a checking, savings, or other consumer asset account belonging to her).

Even if Defendants were financial institutions with respect to Plaintiff and Plaintiff had a consumer account with them (she did not, nor does she allege this), Plaintiff cannot establish that Defendants violated the EFTA error resolution provision because she has not alleged an "error" within the meaning of the statute. Plaintiff alleges that Defendants' "error" was their holding of funds that—according to her—should have been paid either to her or to the merchant. Dkt. 16 ¶ 77. But Plaintiff does not, and cannot, explain how Defendants' actions fall within any of the seven categories of "errors" specifically identified in EFTA. *See* 12 C.F.R. § 1005.11(a)(1) (2019). At best, Plaintiff alleges an account freeze, which is not an "error" under EFTA. *Id.*; *see also Hardin v. Bank of America*, No. 22 Civ. 10023, 2022 WL 3568568, at *3 (E.D. Mich. Aug. 18, 2022) ("EFTA does not regulate account freezes . . . . [Regulation E] does not define account freezes as an 'error' under the EFTA."). Because there was no error, there could not have been any corresponding error resolution obligations.

Plaintiff's grievance cannot be shoehorned into an EFTA claim against Defendants. The claim should be dismissed.

## VI.   PLAINTIFF CANNOT REHABILITATE HER CLAIMS WITH AMENDMENT.

Furthermore, the Court should dismiss Plaintiff's claims with prejudice because amendments would be futile. *See Protégé Rest. Partners LLC v. Sentinel Inc. Co., Ltd.*, 517 F. Supp. 3d 981, 986 (N.D. Cal. 2021). "[A]mendment is futile only if no set of facts can be proved under the amendment that would constitute a valid claim." *Barrett v. Apple Inc.*, 523 F. Supp. 3d

1132, 1149 (N.D. Cal. 2021). To determine whether amendment would be futile, courts examine whether the complaint can be amended to cure the defect requiring dismissal without contradicting any of the allegations of the original complaint. *Javier v. Assurance IQ, LLC*, No. 20 Civ. 02860, 2023 WL 114225, at *2 (N.D. Cal. Jan. 5, 2023) (quoting *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990)).

Here, where Plaintiff's grievance arises from Defendants' holding of funds—in compliance with Defendants' terms that Plaintiff had notice of and in accordance with federal law—Plaintiff simply cannot amend to either manufacture Article III standing or resuscitate her fatally flawed claims. No additional facts, even taken as true, could cure the deficiencies in Plaintiff's complaint. Accordingly, Plaintiff should not be given leave to amend her claims.[8]

---

[8] In the event that any of Plaintiff's claims survive, Defendants reserve all rights, including the ability to move to compel arbitration in the forum Plaintiff initially chose. Dkt. 16 ¶ 35.

1  **VII.    CONCLUSION**

2        For the foregoing reasons, the Court should dismiss Plaintiff's claims in the First Amended

3  Complaint with prejudice.

4

   Dated:  June 29, 2023                        **KING & SPALDING, LLP**

5

6                                               By:   */s/ Lennette W. Lee*
                                                     Lennette W. Lee (SBN 263023)
7                                                    *llee@kslaw.com*
                                                     KING & SPALDING LLP
8                                                    633 W. 5th Street, Suite 1600
                                                     Los Angeles, CA 90071
9                                                    Tel: (213) 443-4355
                                                     Fax: (213) 443-4310
10

11                                                   Leigh Nathanson (admitted *pro hac vice*)
                                                     *lnathanson@kslaw.com*
12                                                   KING & SPALDING LLP
                                                     1185 Avenue of the Americas, 34th Floor
13                                                   New York, NY 10036
                                                     Tel: (212) 556-2100
14                                                   Fax: (212) 556-2222

15                                                   Attorneys for Defendants
16                                                   BLOCK, INC., SQUARE CAPITAL, LLC,
                                                     and SQUARE FINANCIAL SERVICES, INC.
17

18

19

20

21

22

23

24

25

26

27

28