Matthew Shayefar (Cal. SBN. 289685)
matt@shayefar.com
Law Office of Matthew Shayefar, PC
750 N. San Vicente Blvd, 800 West
West Hollywood, California 90069
Tel: 323-948-8101

Valentin Gurvits (MA Bar No. 643572) *pro hac vice*
vgurvits@bostonlawgroup.com | Tel: 617-928-1804
Frank Scardino (MA Bar No. 703911) *pro hac vice*
frank@bostonlawgroup.com | Tel: 617-928-1805
Boston Law Group, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459

*Attorneys for Plaintiff Maria Zurabova*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

|  |  |
|---|---|
| MARIA ZURABOVA<br>    Plaintiff,<br><br>v.<br><br>BLOCK, INC.;<br>SQUARE CAPITAL, LLC; and<br>SQUARE FINANCIAL SERVICES, INC.<br>    Defendants. | **CASE NO. 4:23-CV-00953-JST**<br>*Assigned to the Honorable Jon S. Tigar in Courtroom 6*<br><br>**PLAINTIFF MARIA ZURABOVA'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>[Request for Judicial Notice and Exhibits thereto filed concurrently]<br><br>Date:   September 14, 2023<br>Time:   2:00 p.m.<br>Ctrm.:  6<br>Before the Hon. Jon S. Tigar |

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................................ii

TABLE OF AUTHORITIES ....................................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................1

I.   Introduction ........................................................................................................1

II.  Facts ...................................................................................................................2

  A.   Formation of the Contract............................................................................2

  B.   Square's Wrongful Withholding of the Funds..............................................4

III. Argument ............................................................................................................6

  A.   Motion to Dismiss Standard ........................................................................6

  B.   Plaintiff's Claims Are Justiciable ................................................................7

  C.   Plaintiff Has Properly Plead Claims for Breach of Contract/Breach of the Covenant of Good Faith and Fair Dealing ................................................................................10

  D.   Plaintiff Has Properly Plead a Claim for Conversion.................................15

  E.   Plaintiff Has Properly Plead a Claim for Promissory Estoppel .................16

  F.   Plaintiff States a Claim Under California's Unfair Competition Law, Cal. Bus. and Prof. Code, §17200, *et seq.* ....................................................................................17

  G.   Plaintiff Has Properly Plead Unjust Enrichment. ......................................18

  H.   Plaintiff Has Properly Plead a Claim Under the EFTA ..............................19

IV.  Conclusion.......................................................................................................22

## **TABLE OF AUTHORITIES**

**Cases**

*3500 Sepulveda, Ltd. Liab. Co. v. Macy's W. Stores, Inc.*,

980 F.3d 1317 (9th Cir. 2020)................................................................................13

*Areias v. Applied Underwriters, Inc.*,

2021 U.S. Dist. LEXIS 262098 (N.D. Cal. Oct. 19, 2021)....................................12

*Ashcroft v. Iqbal*,

556 U.S. 662 (2009)..................................................................................................6

*Astiana v. Hain Celestial Grp., Inc.*,

783 F.3d 753 (9th Cir. 2015)..................................................................................12

*Bell Atl. Corp. v. Twombly*,

550 U.S. 544 (2007)..................................................................................................6

*Bentham v. Bingham Law Grp.*,

2013 U.S. Dist. LEXIS 205541 (S.D. Cal. Nov. 14, 2013) ...................................15

*C.W. v. Epic Games, Inc.*,

2020 U.S. Dist. LEXIS 162490 (N.D. Cal. Sep. 3, 2020).....................................13

*Chapman v. Skype Inc.*,

220 Cal.App.4th 217 (2013)......................................................................................6

*Chen v. PayPal, Inc.*,

61 Cal.App.5th 559 (2021)......................................................................................15

*Di Grazia v. Sazerac Co.*,

2008 U.S. Dist. LEXIS 137136 (N.D. Cal. Dec. 16, 2008) ...................................12

*Dorsey v. United States Bank Nat'l Ass'n & Paypal, Inc.*,

2012 U.S. Dist. LEXIS 204435 (M.D. La. Apr. 2, 2012) ......................................20

*Edwards v. Fed. Home Loan Mortg. Corp.*,

    2013 U.S. Dist. LEXIS 75525 (N.D. Cal. May 29, 2013) ........................................ 17

*Gonzales Communs., Inc. v. Titan Wireless, Inc.*,

    2007 U.S. Dist. LEXIS 29273 (S.D. Cal. Apr. 18, 2007) ........................................ 12

*Guarnieri v. Be Money Inc.*,

    2022 U.S. Dist. LEXIS 192811 (C.D. Cal. Oct. 18, 2022) ........................................ 21

*Harris v. Wells Fargo Bank,*

    2013 U.S. Dist. LEXIS 61847 (N.D. Cal. Apr. 30, 2013) ........................................ 16

*Hogan v. Anthony,*

    40 Cal.App. 679 (Dist. Ct. App. 1919) ........................................ 9

*Holden v. Target Corp.*,

    2016 U.S. Dist. LEXIS 95490 (N.D. Cal. July 21, 2016) ........................................ 7

*In re Bank of Am. Cal. Unemployment Benefits Litig.*,

    2023 U.S. Dist. LEXIS 92232 (S.D. Cal. May 25, 2023) ........................................ 21

*In re HP Inkjet Printer Litig.*,

    2006 U.S. Dist. LEXIS 12848 (N.D. Cal. Mar. 7, 2006) ........................................ 12, 19

*Knievel v. ESPN,*

    393 F.3d 1068 (9th Cir. 2005) ........................................ 6

*Mendiondo v. Centinela Hosp. Med. Ctr.*,

    521 F.3d 1097 (9th Cir. 2008) ........................................ 6

*Metro. Mortg. & Sec. Co. v. Quinn (In re Metro. Mortg. & Sec. Co., Inc.)*,

    347 B.R. 406 (Bankr. E.D. Wash. 2006) ........................................ 9

*Organic Consumers Ass'n v. Sanderson Farms, Inc.*,

    284 F.Supp.3d 1005 (N.D. Cal. 2018) ........................................ 6

*Peacock v. The 21st Amendment Brewery Cafe, LLC,*

   2018 U.S. Dist. LEXIS 7537 (N.D. Cal. Jan. 17, 2018) .......................................................... 18

*Pension Tr. Fund v. Fed. Ins. Co.,*

   307 F.3d 944 (9th Cir. 2002) ................................................................................................... 13

*Planned Parenthood v. Lawall,*

   193 F.3d 1042 (9th Cir. 1999) ................................................................................................. 11

*Rollins v. Dignity Health,*

   338 F.Supp.3d 1025 (N.D. Cal. 2018) ..................................................................................... 18

*Stoval v. Basin St. Props.,*

   2013 U.S. Dist. LEXIS 161265 (N.D. Cal. Nov. 12, 2013) ..................................................... 14

*Summit Fin. Holdings, Ltd. v. Cont'l Lawyers Title Co.,*

   27 Cal.4th 705 (2002) .............................................................................................................. 14

*Uhlmeyer v. Usaa Cas. Ins. Co.,*

   2020 U.S. Dist. LEXIS 25538 (D. Nev. Feb. 13, 2020) .......................................................... 12

*Volkswagen Grp. of Am., Inc. v. Smartcar, Inc.,*

   2022 U.S. Dist. LEXIS 243247 (N.D. Cal. July 7, 2022) ........................................................ 12

*Youngman v. Nevada Irrigation Dist.,*

   70 Cal.2d 240 (1969) ............................................................................................................... 16

**Statutes**

15 U.S.C. § 1693(b) ...................................................................................................................... 19

15 U.S.C. § 1693a(9) ..................................................................................................................... 19

Cal. Civ. Code § 3523 ..................................................................................................................... 9

**Other Authorities**

87 Fed. Reg. 173 (2022)...................................................................................................7

87 Fed. Reg. 174 (2022)...................................................................................................8

**Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................................................6

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction

Despite current trends in motion practice, not *every* case calls for a Rule 12(b)(6) motion to dismiss.  In some cases – this one for example – such a motion is little more than make-work: a box that Defendants tick off, knowing that the case will proceed to discovery, but interposing the motion nonetheless, heedless of the unnecessary costs to the Court and the parties.  Here, Defendants' Motion to Dismiss could be distilled almost entirely into a single sentence that might read: We grabbed Plaintiff's money a year and a half ago, we're not giving it back, and there's nothing Plaintiff or this Court can do about it.  A second sentence to capture the Motion's subtext might be: Also, the Federal Rules of Civil Procedure (at least insofar as they govern motions under Rule 12) don't really apply to us so, Court, grant our Motion which relies on uncited factual allegations and assumptions that appear nowhere within the four corners of the First Amended Complaint ("FAC").[1]

In the present case, Plaintiff Maria Zurabova ("Ms. Zurabova" or "Plaintiff") seeks damages and other relief for the acts and omissions of the named Defendants (collectively "Square" or "Defendants").  Zurabova made more than $645,000 worth of purchases with a merchant using Defendants' payment processing services.  Defendants received these funds from Zurabova's bank but failed to pass these funds along to the merchant, failed to refund them to Zurabova, and instead illegally retained more than $645,000 in funds for more than sixteen (16) months as of today.  On June 29, 2023, Square filed the present motion to dismiss all counts of

---

[1] To be clear, Plaintiff is *not* objecting to the proper use of documents for which judicial notice may be taken but rather Defendants' references to uncited factual allegations and facts that Defendants claim would be confirmed through the discovery process.  *See*, *e.g.*, Defendants' Motion, p. 18, fn. 7.

1   Plaintiff's FAC (the "Motion").  Dkt. 29.  Ms. Zurabova opposes the Motion for the reasons

2   described herein.

3   **II.      Facts**

4          **A.      Formation of the Contract**

5          Between about March 7 and March 9, 2022, Plaintiff made several purchases of

6   diamonds and other pieces of jewelry (the "Merchandise") from Royal Star Inc., a jeweler in the

7   Diamond District of New York City, located at 36 West 47th Street 204, New York, NY 10036

8   (the "Merchant").  Plaintiff's First Amended Complaint (the "FAC"), Dkt. 16, ¶ 11.  The

9   Merchant, using Square's payment processing system, tendered to Zurabova approximately

10  twenty-eight (28) separate invoices representing <u>$645,083</u> of Merchandise (the "Invoices" and

11  the "funds," respectively).  FAC, ¶¶ 15, 29; Dkt. 16-3.  Copies of the Invoices are attached as

12  Exhibit C to the FAC.  FAC, ¶ 29; Dkt. 16-3.  Using Square's payment processing services,

13  Plaintiff paid the Invoices and the funds were transferred into the custody and possession of

14  Square. FAC, ¶ 16; Motion, p. 5.  The bank debit cards used for these purchases were issued by

15  Alfa-Bank, a large bank based in Russia.  FAC, ¶ 19; Motion, p. 1.  Although Plaintiff is a

16  citizen of the United States who lives in Florida, she maintained a Russian bank account.  FAC,

17  ¶¶ 1, 19-20.

18         By paying for the Merchandise through Square's Invoices, Plaintiff became party to

19  Square's General Terms of Service (the "Terms"), a copy of which was attached as Exhibit A to

20  the FAC.  FAC, ¶ 8; Dkt. 16-1.  A copy of the Terms in their current form can be found at the

21  following URL: https://squareup.com/us/en/legal/general/ua.  FAC, ¶ 8.  The Terms begin as

22  follows:

23         These General Terms of Service ('General Terms') are a legal agreement between
           you, as a current or prospective customer of Square's services ('you,' 'your') and
24         Block, Inc. Square Capital, LLC, and/or Square Financial Services, Inc., ('Square,'

'we,' 'our' or 'us') and govern your use of Square's services, including mobile applications, websites, software, cloud-based solutions, hardware, and other products and services in the United States of America (collectively, the 'Services'). By using any of the Services, you agree to these General Terms and any policies referenced within.

FAC, ¶ 17; Terms, p. 1.

The Terms incorporate by reference Square's "Payment Terms" and link to them.  Terms, pp. 1-2; Motion, p. 5.  A copy of the Payment Terms from Square's website (as last updated on May 16, 2022) is attached to the concurrently filed Request for Judicial Notice ("RJN") as Exhibit 1 (the "Payment Terms").  The Payment Terms expressly state:

By using Block, Inc. and Square Capital, LLC ('Square,' 'we,' 'our,' or 'us') payment processing services and other payment methods that Square may offer from time to time ('Payment Services'), you agree to be bound by the General Terms of Service ('General Terms'), these additional terms and conditions ('Payment Terms')
...
In connection with the Payment Services, you authorize us to act as your agent for the purposes of holding, receiving, and disbursing funds on your behalf.

Payment Terms, pp. 1, 3-4.

The Invoices (copies of which are attached as Exhibit C to the FAC and found at Dkt. 16-3), were provided in electronic format and have a hyperlink at the bottom linking the Invoice to Square's Privacy Notice found at https://squareup.com/us/en/legal/general/privacy-no-account[2] (the "Privacy Notice," a copy of which is attached to the RJN as Exhibit 2).  *See* Dkt. 16-3.  At the top of the Privacy Notice[3] web page, there is a link to both the Terms and the Payment Terms.  The text of the Privacy Notice also makes express reference to, and provides additional

---

[2] The link on the Invoices actually directs to this URL:
https://squareup.com/us/en/legal/general/privacy, but this webpage further directs viewers who have no registered Square account to this URL:
https://squareup.com/us/en/legal/general/privacy-no-account.
[3] This appears on the top of the Privacy Page when viewing on a web browser, but at the very last page of the provided Exhibit.

hyperlinks to, the Terms.  Privacy Notice, pp. 12, 17.  As such, Plaintiff became party to the Terms and the Payment Terms with Square by utilizing Square's services, its website, software, and paying the Invoices through Square's electronic funds transfer system (which also linked directly to the Payment Terms and also linked to the Terms).  By paying the Invoices in this fashion, Ms. Zurabova used both Square's "website" and "software" as referenced in the Terms, and therefore became party to the Terms and Payment Terms with Square.  FAC, ¶¶ 10, 18.

### B.   Square's Wrongful Withholding of the Funds

The Invoices were paid between March 7 and March 9, 2022. FAC, ¶ 11; Dkt. 16-4. Square received the funds from the bank accounts linked to the debit cards used to pay the Invoices promptly thereafter.[4] FAC, ¶ 16; Dkt. 16-4; Motion, p. 5.  There were no relevant sanctions in effect against Alfa-Bank at the time of the purchases, nor were any such relevant sanctions in place when Square received the funds.  FAC, ¶¶ 21, 23, 31; Dkt. 16-6; Motion, p.6. Despite receiving the funds before any Alfa-Bank sanctions were in effect, Square failed to process the transactions, failed to transfer the funds to the Merchant, and failed to offer any reasonable explanation for its actions.  FAC, ¶¶ 22-24, 26.

Sanctions regarding prohibited transactions involving debt or equity in Alfa-Bank were announced against Alfa-Bank on February 24, 2022, with an effective date of March 26, 2022. (Seemingly, these sanctions reached only transactions involving Alfa-Bank debt or equity, which would not apply to the Merchandise).  FAC, ¶ 23; Dkt. 16-6.  On April 6, 2022, OFAC issued General License No. 23 under 31 CFR Part 587[5] which allowed transactions involving Alfa-

---

[4] Plaintiff expects that discovery will show whether the funds were transmitted directly to Square or first to one of Square's self-described "banking affiliates," Square Financial Services, Inc. or Sutton Bank.

[5] This license can be found on the Federal Register here: https://www.federalregister.gov/documents/2022/09/09/2022-19511/publication-of-russian-harmful-foreign-activities-sanctions-regulations-web-general-licenses-21-21a .

1   Bank to proceed until May 6, 2022.  *See* 70 Fed. Reg. 174 (Sept. 9, 2022) a copy of which is

2   attached to the RJN as <u>Exhibit 3</u>.

3         Instead of transferring the funds to the Merchant, or returning the funds to Ms. Zurabova,

4   during the eight weeks in which no relevant sanctions were in effect, Square instead retained the

5   funds and refused to return them or even offer any reasonable explanation as to why Square

6   failed to process the funds as it was required to do.  FAC, p. 24.

7         Plaintiff and the Merchant made numerous requests to Square to release the Funds, but

8   Square has never communicated directly with Plaintiff concerning these requests.  FAC, ¶¶ 24,

9   26.  Indeed, Square only communicated with Plaintiff through her attorneys, after Plaintiff filed

10  for arbitration against Square.  FAC, ¶¶ 34, 37.  Square made no representations to Plaintiff as to

11  the details of any sort of investigation undertaken with respect to the Funds.  *See*, *generally*,

12  FAC, ¶¶ 24, 34, 37-38; Motion.  The first time that Plaintiff learned of any details concerning

13  Square's purported reason for withholding her funds was when Plaintiff obtained a copy of an

14  email Square sent to the Merchant on December 15, 2022, **more than nine months** after the

15  initial transactions, wherein Square claimed that the reason for the delay was the originating

16  bank, Alfa-Bank, having subsequently been placed on the OFAC SDN List.  FAC, ¶ 30; Dkt. 16-

17  5.  This December 15, 2022, email did not mention any other sanctions aside from the OFAC

18  SDN List.  *Id.*  The OFAC SDN listing for Alfa-Bank notes that Alfa-Bank is sanctioned

19  pursuant to EO 14024 Directive 3, which prohibits dealings in new debt or equity with Alfa

20  Bank effective as of March 26, 2022.  FAC, ¶ 23; Dkt. 16-6.  The Funds and the Merchandise

21  are not related to the debt or equity of Alfa-Bank.  FAC, ¶ 23.

22

23

24

1    III.    **Argument**

2        A.    **Motion to Dismiss Standard**

3        "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

4    cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

5    *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint need only contain

6    "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl.*

7    *Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Facts pleaded by a plaintiff "must be enough to

8    raise a right to relief above the speculative level." *Id.*

9        "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

10   accepted as true, to 'state a claim to relief that is plausible on its face.... A claim has facial

11   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

12   inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*,

13   556 U.S. 662, 678 (2009)).  In determining whether a plaintiff has met this plausibility standard,

14   the Court must "accept all factual allegations in the complaint as true and construe the pleadings

15   in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th

16   Cir. 2005).

17        In particular, with respect to claims for deceptive business practices, such claims

18   generally involve "a question of fact that requires weighing of evidence from both sides."

19   *Organic Consumers Ass'n v. Sanderson Farms, Inc.*, 284 F.Supp.3d 1005, 1014 (N.D. Cal.

20   2018).  "For that reason, courts grant motions to dismiss under the reasonable consumer test only

21   in rare situations in which the facts alleged in the complaint 'compel the conclusion as a matter

22   of law that consumers are not likely to be deceived.'" *Id.* (quoting *Chapman v. Skype Inc.*, 220

23   Cal.App.4th 217, 226-27 (2013)).

24

1    Arguments in a motion to dismiss that require the Court to consider facts outside the four

2    corners of the complaint cannot be considered on a Rule 12(b)(6) motion to dismiss.  *Holden v.*

3    *Target Corp.*, 2016 U.S. Dist. LEXIS 95490, at *6-7 (N.D. Cal. July 21, 2016).  Additionally,

4    the Court does not consider affirmative defenses at the Rule 12(b)(6) motion to dismiss stage.

5    *Id.*

6    **B.      Plaintiff's Claims Are Justiciable**

7    Defendants first attempt to argue that this Court is divested of all ability to adjudicate

8    Plaintiff's claims because, in Defendants' estimation, the granting of relief to Plaintiff "would

9    plainly run afoul of OFAC's existing requirement that all property of Alfa-Bank within the

10   United States is fully blocked and may not be transferred or dealt with by anyone."  Motion, p. 9.

11   Defendants further claim that Plaintiff has no redress in this Court because OFAC regulations

12   preclude judicial process "with respect to any property or interest in property blocked pursuant

13   to §587.201."  *Id.*

14   Defendants' arguments, however, are predicated on a variety of factual assumptions –

15   factual assumptions which neither appear in, nor flow from, the allegations contained in the FAC

16   and which, in any event, are disputed.  First, as the FAC alleges, Ms. Zurabova, a citizen of the

17   United States, completed her perfectly legal transactions (using Square's services, as she was

18   directed to do by the Merchant) before any sanctions had been enacted concerning Alfa-Bank.

19   FAC, ¶¶ 11-12, 15, 21-23.  As such, there are disputed factual questions as to whether Ms.

20   Zurabova's funds were *ever* subject to the Alfa-Bank sanctions, as Defendants claim.  Nor was

21   the *intent* of the sanctions to freeze the funds of innocent individuals such as Ms. Zurabova.

22   Indeed, OFAC's General License 50 specifically permits individuals with accounts at Alfa-Bank

23   to move their assets to other, non-blocked institutions.  *See General License 50*, 87 Fed. Reg.

24   173, p. 54,897-98 (Sept. 8, 2022), attached to RJN as Exhibit 4 ("[T]he unblocking and lump

1    sum transfer of all remaining funds and other assets in the account to the account holder,

2    including to an account of the account holder held at a non-blocked financial institution, are

3    authorized.").

4        Even putting that aside, as is alleged in the FAC, by the time the sanctions first attached,

5    Square had already processed the underlying transactions and had – two weeks earlier – received

6    Ms. Zurabova's funds.  FAC, ¶ 22.  It is without question that Square *could have* but did not

7    remit the funds during that period of time.  And, although Square claims in its Motion that it

8    placed a hold on these funds during this time: (a) there is nothing in the FAC itself to suggest

9    that Square did so (and as such this affirmative defense cannot be considered by the Court at this

10   stage), and (b) even assuming that this is what Square did, the question of whether Square's

11   actions were reasonable and/or comported with Square's standard procedures are questions to be

12   resolved first through discovery and, ultimately, by a jury.

13       And, indeed, it is not simply a two-week period at issue here.  General License 23

14   permitted financial institutions to continue to process transactions involving Alfa-Bank assets

15   through May 6, 2022 – more than eight weeks *after* Ms. Zurabova completed her transactions

16   and Square took possession of the funds in question.  *See General License 23*, 87 Fed. Reg. 174,

17   p. 55,276, 55,277 (Sept. 9, 2022) attached to RJN as Exhibit 3.  Once again, Square *could have*

18   but did not remit the funds during that eight-week period of time.

19       Square claims in its Motion that, by virtue of the fact that Square unilaterally chose to

20   hold Ms. Zurabova's funds for more than eight weeks, that it is not only absolved of any

21   responsibility (because of the subsequent freeze on Alfa-Bank funds), but that its actions are

22   wholly unreviewable by this (or any) Court.  This is absurd.  First, given that Square had the

23   funds in its possession for eight weeks, it is likely that Alfa-Bank no longer had any property

24   interest in the funds and, as such, they were not properly the subject of any sanctions against

Alfa-Bank.  In truth, it is impossible at this stage to know precisely how the disputed funds travelled, a question that may be crucial in determining if the funds at issue are subject to the sanctions at all.  For example, if the funds did not travel directly from Alfa-Bank to Square, but instead were handled first by another intermediary bank, Ms. Zurabova's argument that Alfa-Bank has no property interest in the funds is made even stronger.  This is, of course, precisely what discovery is for and yet another reason why dismissal under Rule 12(b)(6) would be improper.

Finally, taken to its logical extreme, Defendants' argument would mean that – had Ms. Zurabova initiated her transactions in 2020 (for example) and Defendants had frozen her funds not just for eight weeks but instead for three and a half years before sanctions had been imposed on Alfa-Bank – they would still be able to assert that Ms. Zurabova had no cause of action (and this Court no power to remedy Defendants' wrongs) because, once upon a time, the funds had originated from a now-sanctioned entity.  This cannot possibly be the case.  If Defendants' conduct improperly caused loss to Ms. Zurabova, Defendants can (and must) be held liable for the damages so caused.  *See, e.g.,* Cal. Civ. Code § 3523 ("For every wrong there is a remedy."); *Metro. Mortg. & Sec. Co. v. Quinn (In re Metro. Mortg. & Sec. Co., Inc.)*, 347 B.R. 406, 409 (Bankr. E.D. Wash. 2006) ("Equity will not suffer a wrong without a remedy."); *Hogan v. Anthony*, 40 Cal.App. 679, 683 (Dist. Ct. App. 1919) ("[T]he findings quoted show that as a means of wrongfully obtaining plaintiff's money, defendants knowingly perpetrated the grossest fraud, and to uphold the judgment entered thereon would render the language of the legislature that 'for every wrong there is a remedy' (Civ. Code, sec. 3523), and 'no one can take advantage of his own wrong' (Civ. Code, sec. 3517), idle and meaningless declarations.").  And, such damages can be awarded without any violation of OFAC regulations – either because the facts will show that the funds at issue are not properly subject to sanctions or because the facts will

9

1    find that Ms. Zurabova is entitled to recover against Defendants' own assets because her

2    damages were caused by the Defendants' wrongdoing.  In either event, Ms. Zurabova's claims

3    are justiciable and survive the present motion to dismiss.

4         **C.**      **Plaintiff Has Properly Plead Claims for Breach of Contract/Breach of the**

5                      **Covenant of Good Faith and Fair Dealing**

6              Defendants' first two arguments concerning Ms. Zurabova's contract claim – that there is

7    no agreement between the parties and that Ms. Zurabova has not identified the specific provision

8    breached – need not delay the Court for long.  With respect to the first argument, and as the

9    above factual recitation states, Square's own Terms make it abundantly clear that one cannot

10   utilize Square's payment services without agreeing to Square's Terms.  As is discussed, above,

11   Square's Payment Terms expressly state: "By using Block, Inc. and Square Capital, LLC

12   ('Square,' 'we,' 'our,' or 'us') payment processing services and other payment methods that

13   Square may offer from time to time ('Payment Services'), you agree to be bound by the General

14   Terms of Service ('General Terms'), these additional terms and conditions ('Payment Terms')....

15   In connection with the Payment Services, you authorize us to act as your agent for the purposes

16   of holding, receiving, and disbursing funds on your behalf."  Payment Terms, pp. 1, 3-4.  Each

17   of the Square invoices that Ms. Zurabova paid – utilizing Square's payment services – contained

18   links to Square's Terms.[6]  It is somewhat astonishing, then, that Square is attempting to disclaim

19   its own Terms of Service but its attempt to do so must fail.  At a bare minimum, the FAC

20   properly alleges that, by utilizing Square's payment services, Ms. Zurabova entered into a

21

22

23   _____

[6] Some of Square's Terms incorporate by reference other portions of their terms of service, but,
24   collectively, the Terms form a contract as between Square and the users of Square's products
     and services.

1   contractual relationship with Square and, as such, Ms. Zurabova has plausibly pled the existence

2   of a contractual relationship.

3         Square's second argument is so shocking as to recall the oft-stated legal saw that:

4   "Merely to state so ludicrous a proposition suffices to refute it." *Planned Parenthood v. Lawall*,

5   193 F.3d 1042, 1045-46 (9th Cir. 1999).  While recognizing that the Complaint properly alleges

6   that Square breached the terms of its Agreement with Ms. Zurabova by "failing to transfer the

7   funds to the Merchant and also refusing to refund the funds to Zurabova," (Motion, p. 10),

8   Square nonetheless argues that it is not actually bound by any agreement to provide the services

9   which it agrees to provide.  It is worth breaking that down:  Square, which states that it provides

10  payment processing services that allow users of its payment application to make payments to

11  merchants pursuant to its Terms (which require the user to agree that Square is authorized to

12  hold, receive, and disburse funds on the user's behalf) asks this Court to conclude that – as a

13  matter of law – it has no contractual obligation to provide the very service that it claims to

14  provide.  This is both astonishing and ridiculous.

15        At a bare minimum, even if the Terms did not contain an explicit obligation for Square to

16  provide the service it was contracting to provide (and, again, it sounds ridiculous even to say

17  that), the covenant of good faith and fair dealing certainly imposes such an obligation.  And,

18  here, Defendants invite the Court to follow them even further down the rabbit hole into

19  Wonderland.  Defendants first argue, again, that Plaintiff's good faith and fair dealing claim fails

20  because no contractual agreement exists as between the parties, an argument that fails for the

21  same reasons as discussed above.

22        Defendants next argue that Plaintiff's good faith and fair dealing claim should be

23  dismissed as being "superfluous" since it overlaps her breach of contract claim.  Putting aside

24  the fact that this argument directly contradicts Defendants' argument that Ms. Zurabova has

1    failed to identify an explicit contractual term that Defendants breached, Plaintiff is permitted to

2    plead her theories in the alternative.  *See*, *e.g.*, *Areias v. Applied Underwriters, Inc.*, 2021 U.S.

3    Dist. LEXIS 262098, at *22-23 (N.D. Cal. Oct. 19, 2021) ("*Raisin Bargaining* cites no authority

4    for the proposition that written and oral contracts cannot be pleaded in the alternative, and there

5    is abundant law to the contrary. 'Plaintiff[s'] allegation of both an oral and a written contract is

6    merely an alternative pleading. A party may plead alternative theories of liability, even if those

7    theories are inconsistent or independently sufficient.' ...  Plaintiff's pleading of a claim for

8    breach of implied-in-fact contract in the alternative to its claim for breach of written contract is

9    permissible under Rule 8 and is not a basis for dismissal of the claim." (citations omitted));

10   *Volkswagen Grp. of Am., Inc. v. Smartcar, Inc.*, 2022 U.S. Dist. LEXIS 243247, at *16-17 (N.D.

11   Cal. July 7, 2022) ("The Ninth Circuit has made clear that plaintiffs may plead alternative bases

12   of liability" (citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015), for

13   proposition that unjust enrichment claim should not be dismissed merely "because it was

14   duplicative of or superfluous to [plaintiff's] other claims")); *Di Grazia v. Sazerac Co.*, 2008 U.S.

15   Dist. LEXIS 137136, at *14 (N.D. Cal. Dec. 16, 2008) ("The Court finds that Plaintiff's unjust

16   enrichment claim to be pleaded in the alternative to the breach of contract and breach of the

17   implied covenant of good faith and fair dealing claims."); *Gonzales Communs., Inc. v. Titan*

18   *Wireless, Inc.*, 2007 U.S. Dist. LEXIS 29273, at *9 n. 2 (S.D. Cal. Apr. 18, 2007) ("The Court

19   deems the unjust enrichment counterclaim to be pleaded in the alternative to the breach of

20   contract and breach of the implied covenant of good faith and fair dealing counterclaims."); *In re*

21   *HP Inkjet Printer Litig.*, 2006 U.S. Dist. LEXIS 12848, at *20 (N.D. Cal. Mar. 7, 2006)

22   ("[A]lthough the terms of HP's written warranty agreements may govern the relationship

23   between HP and Plaintiffs, Plaintiffs may plead an unjust enrichment claim in the alternative.");

24   *Uhlmeyer v. Usaa Cas. Ins. Co.*, 2020 U.S. Dist. LEXIS 25538, at *14 (D. Nev. Feb. 13, 2020)

12

1    ("Uhlmeyer's second claim for a violation of the duty of good faith and fair dealing, however,

2    must be pleaded in the alternative to breach of contract. This is because a contractual breach of

3    the covenant of good faith and fair dealing arises when one party to a contract complies with the

4    terms of the contract but contravenes the intention and spirit of the contract.").

5        Defendants next claim that, under California law, a claim for breach of the covenant of

6    good faith and fair dealing requires a "special relationship with fiduciary characteristics,"

7    *partially* quoting *Pension Tr. Fund v. Fed. Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002).  Motion,

8    p. 11. Defendants' incomplete quotation, however, is misleading to say the least.  What the

9    Court in *Pension Tr. Fund* said in full was:

10           Generally, no cause of action for the **tortious** breach of the implied covenant of
             good faith and fair dealing can arise unless the parties are in a "special relationship"
11           with "fiduciary characteristics." ... Thus, the implied covenant **tort** is not available
             to parties of an ordinary commercial transaction where the parties deal at arms'
12           length.

13   *Id.* (citations omitted) (emphasis added).

14       California law recognizes **both** a contractual claim for breach of the covenant of good

15   faith and fair dealing and a tortious claim.  It is only the latter that requires a showing of a

16   fiduciary relationship.  *See, e.g., C.W. v. Epic Games, Inc.*, No. 19-cv-03629-YGR, 2020 U.S.

17   Dist. LEXIS 162490, at *8 (N.D. Cal. Sep. 3, 2020) ("[P]laintiffs contend that they have asserted

18   a 'tortious bad-faith' claim separate from their 'contractual bad-faith claim.' 'Generally, no

19   cause of action for the tortious breach of the implied covenant of good faith and fair dealing can

20   arise unless the parties are in a 'special relationship' with 'fiduciary characteristics.'").

21       This, of course, makes perfect sense because, under California law, *every* contract carries

22   with it an implied covenant of good faith and fair dealing.  *See, e.g., 3500 Sepulveda, Ltd. Liab.*

23   *Co. v. Macy's W. Stores, Inc.*, 980 F.3d 1317, 1324 (9th Cir. 2020) ("There is an implied

24   covenant of good faith and fair dealing in every contract that neither party will do anything

13

1    which will injure the right of the other to receive the benefits of the agreement....   A party can

2    breach the covenant without 'breach of a specific provision of the contract.' ...   Rather, the

3    question is whether the party's conduct, 'while not technically transgressing the express

4    covenants ... frustrates the other party's rights to the benefits of the contract.' ...  'The covenant

5    of good faith finds particular application in situations where one party is invested with a

6    discretionary power affecting the rights of another.'  The party with discretionary power must

7    exercise such power in good faith and through 'objectively reasonable conduct.'" (numerous

8    citations omitted)); *Stoval v. Basin St. Props.*, 2013 U.S. Dist. LEXIS 161265, at *21 (N.D. Cal.

9    Nov. 12, 2013) ("Every contract possesses an implied covenant of good faith and fair dealing in

10   which neither party will do anything which will injure the right of the other to receive the

11   benefits of the agreement.").

12          It is only where there is no contract as between the parties where a party needs to plead

13   the existence of a fiduciary relationship because then, even in the absence of a contract, the

14   fiduciary relationship imposes a duty of good faith and fair dealing, giving rise to the tortious

15   version of the claim.  Ironically, of course, Square's own terms of service strongly suggest that

16   such a fiduciary relationship exists here, even though such a relationship is not necessary to Ms.

17   Zurabova's claims. *See* Payment Terms, pp. 3-4 ("In connection with the Payment Services, you

18   authorize us to act as your agent for the purposes of holding, receiving, and disbursing funds on

19   your behalf."); *Summit Fin. Holdings, Ltd. v. Cont'l Lawyers Title Co.*, 27 Cal.4th 705, 711

20   (2002) ("An escrow involves the deposit of documents and/or money with a third party to be

21   delivered on the occurrence of some condition....  An escrow holder is an agent and fiduciary of

22   the parties to the escrow.  The agency created by the escrow is limited -- limited to the obligation

23   of the escrow holder to carry out the instructions of each of the parties to the escrow....  If the

24   escrow holder fails to carry out an instruction it has contracted to perform, the injured party has a

1    cause of action for breach of contract." (citations omitted)); *Bentham v. Bingham Law Grp.*,

2    2013 U.S. Dist. LEXIS 205541, at *15 (S.D. Cal. Nov. 14, 2013) ("As to the first element,

3    Bentham alleges that BLG served as the escrow holder for the benefit of Bentham and therefore

4    sufficiently alleges the existence of a fiduciary relationship.").

5            Ultimately, Defendants' arguments fail as Ms. Zurabova has properly plead claims for

6    breach of contract and breach of the covenant of good faith and fair dealing.

7            **D.      Plaintiff Has Properly Plead a Claim for Conversion**

8            Defendants make two equally unavailing arguments in connection with Plaintiff's claim

9    for Conversion: (1) that such a claim would be duplicative of Plaintiff's contract claim, and (2)

10   that the claim fails because Ms. Zurabova "assented to the transaction."  Motion, p. 12.  The first

11   argument fails because, as discussed above, Plaintiff may plead claims in the alternative even

12   though she cannot recover more than once for the same injury.  With respect to their second

13   argument, Defendants claim that, because their terms of service provide that Square may delay

14   the release of funds under certain circumstances, that Ms. Zurabova assented to the improper and

15   indefinite freezing of her account.  Specifically, Defendants cite to Section 12 of the Payment

16   Terms, which provides that:

17           We may defer payout or restrict access to your Proceeds if we need to conduct an
             investigation or resolve any pending dispute related to your use of the Services, or
18           in accordance with our Terms. We also may defer payout or restrict access to your
             Proceeds as necessary to comply with applicable law or court order, or if requested
19           by any governmental entity.

20           Defendants rely on *Chen v. PayPal, Inc.*, 61 Cal.App.5th 559 (2021), which they claim

21   supports their "assent" argument.  Motion, p. 12.  The case could hardly be more distinguishable.

22   In *Chen*, the relevant contractual provision read as follows:

23           "5.2. **Assignment of Interest to PayPal**. You agree that you will not receive
             interest or other earnings on the funds that PayPal handles as your agent and places
24           in Pooled Accounts. In consideration for your use of the PayPal Services, you

15

Opposition to Defendants' Motion to Dismiss
Case No. 4:23-CV-00953-JST

irrevocably transfer and assign to PayPal any ownership right that you may have in any interest that may accrue on funds held in Pooled Accounts. This assignment applies only to interest earned on your funds, and nothing in this Agreement grants PayPal any ownership right to the principal of the funds you maintain with PayPal. In addition to or instead of earning interest on Pooled Accounts, PayPal may receive a reduction in fees or expenses charged for banking services by the banks that hold your funds."

*Id.* at 575.

Unsurprisingly, when the plaintiff there brought a conversion claim seeking payment of the interest he would otherwise have earned, the Court rejected such a claim because, by explicitly assenting to the irrevocable transfer and assignment of such interest to PayPal in consideration for the use of the PayPal services, that plaintiff had agreed that they had no ownership rights in the interest and that PayPal had not wrongfully disposed of the interest.

In the present case, Ms. Zurabova did not assent to the improper and unreasonable seizure of her funds by Square for almost a year and a half.  Moreover, to the extent that Defendants wish to argue about the degree of Ms. Zurabova's alleged assent (and the reasonableness of its own actions), those are factual issues that cannot be resolved on a motion to dismiss.

**E.    Plaintiff Has Properly Plead a Claim for Promissory Estoppel**

"The elements of a promissory estoppel claim are (1) a promise, (2) reliance on that promise that (3) is reasonable and foreseeable, and (4) injury."  *Harris v. Wells Fargo Bank,* 2013 U.S. Dist. LEXIS 61847, at *29 (N.D. Cal. Apr. 30, 2013) (citing *Youngman v. Nevada Irrigation Dist.*, 70 Cal.2d 240, 249 (1969)).  As with her other claims, Ms. Zurabova is permitted to plead her promissory estoppel claim in the alternative to her breach of contract claim.  *Id.*  Defendants' argument here is – again – the alleged lack of a definitive promise and Defendants' claim that any reliance on such a promise would be unreasonable given the terms of service provision allowing accounts to be temporarily frozen.  Once again, however, the entire

premise of Defendants' business is that it will responsibly and professionally provide its

payment processing services and that it will disburse those funds provided to it in a responsible

and reasonable manner.  And, while Defendants attempt to argue that this promise is not

sufficiently definitive, "to be enforceable, a promise need only be definite enough that a court

can determine the scope of the duty[,] and the limits of performance must be sufficiently defined

to provide a rational basis for the assessment of damages."  *Edwards v. Fed. Home Loan Mortg.*

*Corp.*, 2013 U.S. Dist. LEXIS 75525, at *9 (N.D. Cal. May 29, 2013) (denying motion to

dismiss claim).

Ultimately, Defendants' argument with respect to this claim requires the resolution of

factual disputes which cannot be done on a motion to dismiss.

**F.      Plaintiff States a Claim Under California's Unfair Competition Law, Cal.**
**Bus. and Prof. Code, §17200, *et seq.***

California's Unfair Competition Law ("UCL") broadly prohibits "any unlawful, unfair or

fraudulent business act or practice."  Here, the FAC clearly alleges that Square first committed

such acts when it failed to provide the payment processing services that it promised and instead,

seizing Ms. Zurabova's funds without explanation or valid basis.  Furthermore, despite Square's

insistence that it was required to block access to Plaintiffs' funds because of the sanctions placed

on Alfa-Bank, as the FAC and above recitation of facts makes clear, no such sanctions were in

place when Square first improperly refused to complete the underlying transactions or return to

Ms. Zurabova the more than $645,000 that Square was improperly holding.  That Square *now*

claims that it was permitted to hold such funds for investigation simply raises an affirmative

defense to Plaintiff's claim – one which cannot be resolved on a motion to dismiss.

Additionally, to the extent that the facts reveal – as Ms. Zurabova has alleged – that the blocked

1  funds are not, in actuality, subject to the sanctions on Alfa-Bank, this too presents a factual

2  question as to whether Defendants can be held liable under the UCL.

3        Separately, while Defendants claim that Ms. Zurabova's UCL claim should be dismissed

4  because she has an adequate remedy under the law pursuant to the other counts of her complaint,

5  such an argument is premature.  As with her other claims, Ms. Zurabova is permitted to pursue

6  claims in the alternative.  Defendants argue that Ms. Zurabova has no contractual or quasi-

7  contractual rights and, if the court were to ultimately agree with such arguments, Ms. Zurabova's

8  UCL claim might represent her only remedy under the law.  *See*, *e.g.*, *Peacock v. The 21st*

9  *Amendment Brewery Cafe, LLC*, 2018 U.S. Dist. LEXIS 7537, at *27-28 (N.D. Cal. Jan. 17,

10  2018) ("21st Amendment cites the *Rhynes* case for the proposition that 'a plaintiff seeking

11  equitable relief must establish that there is no adequate remedy at law available' ...  This

12  argument would be compelling if the Court was not dismissing Peacock's CLRA

13  claims. However, his only remaining claims are under the UCL, which 'only provides equitable

14  remedies.'").

15        **G.      Plaintiff Has Properly Plead Unjust Enrichment.**

16        Square's main argument in support of its motion to dismiss Ms. Zurabova's unjust

17  enrichment claim is that such a claim is incompatible with a claim for explicit breach of contract.

18  At the risk of beating a dead horse, however, Ms. Zurabova is permitted to plead such a claim in

19  the alternative.  *See*, *e.g.*, *Rollins v. Dignity Health*, 338 F.Supp.3d 1025, 1042 (N.D. Cal. 2018)

20  ("Defendants are correct that '[a]n action based on quasi-contract cannot lie where a valid

21  express contract covering the same subject matter exists between the parties.' ...  'However, Rule

22  8(d) of the Federal Rules of Civil Procedure expressly permits a plaintiff to plead claims in the

23  alternative, and courts ... have permitted unjust enrichment and breach of contract claims to

24  proceed simultaneously.' ...  In other words, 'even though a plaintiff may not ultimately prevail

1   under both unjust enrichment and breach of contract, it may plead both in the alternative.' ...  'A

2   defendant is not entitled to have a cause of action dismissed for failure to state a claim simply

3   because it conflicts with another cause of action.'"); *In re HP Inkjet Printer Litig.*, 2006 U.S.

4   Dist. LEXIS 12848, at *18-20 (N.D. Cal. Mar. 7, 2006) ("HP argues that Plaintiffs' unjust

5   enrichment claim must be dismissed because specific contracts that exist between Plaintiffs and

6   HP, and an action for unjust enrichment does not lie where a contractual relationship exists

7   between the parties....  To prevail on an unjust enrichment claim, plaintiff must establish that

8   defendant received a benefit and that it would be unjust to allow defendant to retain the benefit at

9   the expense of plaintiff....  Moreover, although the terms of HP's written warranty agreements

10  may govern the relationship between HP and Plaintiffs, Plaintiffs may plead an unjust

11  enrichment claim in the alternative. Accordingly, HP's motion to dismiss Plaintiffs' unjust

12  enrichment claim will be denied.'").

13  ### H.   Plaintiff Has Properly Plead a Claim Under the EFTA

14          Finally, Defendants' motion with respect to Plaintiff's Electronic Funds Transfer Act

15  ("EFTA") claim must be denied inasmuch as Ms. Zurabova has properly stated a claim under the

16  statute and Defendants' factual challenges to her claim cannot succeed on a motion to dismiss.

17  The EFTA explicitly notes that the "primary objective of this title [15 USCS §§ 1693 et seq.]…

18  is the provision of individual consumer rights." 15 U.S.C. § 1693(b).  As such, the statute

19  should be read broadly to achieve Congress' stated intent.

20          Defendants' primary argument is that Ms. Zurabova cannot state an EFTA claim against

21  them because they are not a "financial institution" as defined by the statute.  The EFTA defines

22  "financial institution" as "a State or National bank, a State or Federal savings and loan

23  association, a mutual savings bank, a State or Federal credit union, or any other person who,

24  directly or indirectly, holds an account belonging to a consumer." 15 U.S.C. § 1693a(9).

1      In support of their argument, Defendants point to language in Square's Terms of Service

2  which claims "We are not a bank and do not offer banking services."  Motion, p. 19.  Of course,

3  the mere fact that Square claims that it is not a bank does not make that fact true nor can it

4  override Plaintiff's allegation that Defendants are a "financial institution" under the EFTA.

5  More to the point, though, while Defendants point to the quoted language denying Square's

6  status as a bank, they fail to point the Court to the admission on their website that Defendant

7  Square Financial Services, Inc. *is* a bank.  See <u>Exhibit 5</u>, attached to RJN ("Block, Inc. is a

8  financial services company, not a bank. Banking services are provided by Square's banking

9  affiliate, Square Financial Services, Inc. or Sutton Bank; Members FDIC.").  Indeed, on that

10  same page, Defendants assert that the interaction between their entities is "seamless." *Id.* ("Your

11  payments, banking, and cash flow — all working seamlessly together as one. It's all right here

12  on Square.").  Additionally, Defendants claim in their Motion that they are holding Ms.

13  Zurabova's funds "in a segregated account."  Motion, p. 18, n. 7.  This is sufficient to bring

14  defendants under the statutory definition of a "financial institution" inasmuch as they admit that

15  they "directly or indirectly, hold[] an account belonging to a consumer."  *See*, *also*, *Dorsey v.*

16  *United States Bank Nat'l Ass'n & Paypal, Inc.*, 2012 U.S. Dist. LEXIS 204435, at *13-14 (M.D.

17  La. Apr. 2, 2012) ("The plain text of the Act does not impose a requirement of a contractual

18  relationship with the consumer as a precondition for PayPal's liability....  Under EFTA, a

19  consumer can bring an action against '*any person* who fails to comply with any provision of

20  [EFTA] *with respect to any consumer*.' ...  This text suggests that a direct, contractual

21  relationship is not necessarily a precondition for PayPal's liability under the Act.").

22      Finally, Defendants dispute whether Plaintiff's report that her funds had been improperly

23  frozen constitutes an "error" under the statute triggering Defendants' obligation to conduct a

24  prompt investigation of the claimed error and report back to Plaintiff concerning the results of

that investigation.  Defendants are mistaken for two reasons.  First, though they argue that even an improper freeze placed on an account is not an error under the EFTA, at least one Court has held that a consumer's request for more information about the improper freeze *is* an "error," as that term is defined in the statute.  *In re Bank of Am. Cal. Unemployment Benefits Litig.*, 2023 U.S. Dist. LEXIS 92232, at *25 (S.D. Cal. May 25, 2023) ("Plaintiffs argue that reporting an account freeze constitutes a qualifying error because each individual Plaintiff who reported an account freeze was also requesting additional information to determine whether there was an incorrect or omitted EDD benefits transfer into the account....  Plaintiffs are correct that a request for 'additional information or clarification concerning an electronic fund transfer, including a request [made] to determine whether an error exists,' is a qualifying error....").

Additionally, Defendants' obligation to conduct an investigation is not conditioned upon the existence of an actual error – rather the obligation attaches when the consumer reports her *belief* that there has been an error.  *Guarnieri v. Be Money Inc.*, 2022 U.S. Dist. LEXIS 192811, at *19-20 (C.D. Cal. Oct. 18, 2022) ("§ 1693f(a) speaks of a consumer's 'belief' that its submitted documentation supports an 'error' under the statue occurred. It does not include a requirement for the consumer to necessarily demonstrate an 'error' occurred before a financial institution is required to investigate the consumer's complaint....  To read in a requirement that the consumer must also demonstrate an 'error' before a financial institution is subject to the EFTA's investigatory proscriptions would not only contravene the boundaries of this criteria, but render § 1693f(d)'s requirement that a financial institution provide a customer with its explanation of its determination that an error *did not occur* entirely superfluous.  This proscription would serve no purpose if a financial institution could ignore the EFTA's investigatory requirements merely because a reported 'error' turned out to be a valid transaction.").

1    Because Ms. Zurabova has properly alleged a claim under the EFTA, Defendants'

2    motion must be denied.

3    **IV.    Conclusion**

4          For the reasons stated hereinabove, Defendants' Motion to Dismiss should be denied in

5    its entirety.

6

7    Dated: July 13, 2023                 Respectfully Submitted,

8                                         **LAW OFFICE OF MATTHEW SHAYEFAR, PC**

9                                         By: /s/ *Matthew Shayefar*
                                          Matthew Shayefar (Cal. SBN. 289685)
10                                        matt@shayefar.com
                                          Law Office of Matthew Shayefar, PC
11                                        750 N. San Vicente Blvd, 800 West
                                          West Hollywood, California 90069
12                                        Tel: 323-948-8101

13                                        Valentin Gurvits (MA Bar No. 643572) *pro hac vice*
                                          vgurvits@bostonlawgroup.com | Tel: 617-928-1804
14                                        Frank Scardino (MA Bar No. 703911) *pro hac vice*
                                          frank@bostonlawgroup.com | Tel: 617-928-1805
15                                        Boston Law Group, PC
                                          825 Beacon Street, Suite 20
16                                        Newton Centre, Massachusetts 02459

17                                        Attorneys for Plaintiff Maria Zurabova

18

19

20

21

22

23

24