Lennette W. Lee (SBN 263023)
*llee@kslaw.com*
KING & SPALDING LLP
633 W. 5th Street, Suite 1600
Los Angeles, CA 90071
Tel: (213) 443-4355
Fax: (213) 443-4310

Leigh Nathanson (admitted *pro hac vice*)
*lnathanson@kslaw.com*
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Tel: (212) 556-2100
Fax: (212) 556-2222

Attorneys for Defendants
BLOCK, INC., SQUARE CAPITAL, LLC, and
SQUARE FINANCIAL SERVICES, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| MARIA ZURABOVA, | Case No. 4:23-cv-00953-JST |
| Plaintiff, | **DEFENDANTS BLOCK, INC., SQUARE CAPITAL, LLC, AND SQUARE FINANCIAL SERVICES, INC.'S REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| vs. | |
| BLOCK, INC.; SQUARE CAPITAL, LLC; and SQUARE FINANCIAL SERVICES, INC. | |
| Defendants. | Date:      September 14, 2023 |
| | Time:      2:00 p.m. |
| | Ctrm.:      6 |
| | Before the Hon. Jon S. Tigar |

# TABLE OF CONTENTS

I.      INTRODUCTION ...............................................................................................................1

II.     OFAC REGULATIONS PREVENT THIS COURT FROM AWARDING THE RELIEF
        PLAINTIFF SEEKS. ..........................................................................................................2

III.    PLAINTIFF'S CLAIMS FAIL ON THE MERITS.........................................................6

        A.      Plaintiff Fails to Allege Breach of Contract or of the Implied Covenant of
                Good Faith and Fair Dealing Because Her Complaint Establishes That the
                Defendants' Terms Expressly Authorized the Conduct at Issue. ...........................6

        B.      Plaintiff's Conversion Claim Fails Because She Admits She Assented to
                the Transactions. .....................................................................................................8

        C.      Plaintiff's Promissory Estoppel Claim Fails Because Defendants Made No
                Promise to Permit—and Expressly Reserved the Right to Defer or
                Restrict—Plaintiff's Transactions Based on Their Terms. .....................................9

        D.      Plaintiff's CLRA Claim Fails Because She Identifies No False or
                Misleading Statements by Defendants..................................................................10

        E.      Plaintiff's UCL Claim Fails Because She Alleges No Misconduct.......................10

        F.      Plaintiff Cannot Bring an Unjust Enrichment Claim Because She Alleges a
                Contract Governs the Dispute. ..............................................................................11

        G.      Plaintiff's EFTA Claim Fails Because Defendants Did Not Act as a
                Financial Institution for Plaintiff and Plaintiff Does Not Allege an Error. ..........12

IV.     CONCLUSION.................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................4

*In re Bank of Am. Cal. Unemployment Benefits Litig.*,
No. 21-md-2992, 2023 WL 3668535 (S.D. Cal. May 25, 2023). ...........................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................5, 13

*Beluca Ventures LLC v. Aktiebolag*,
622 F. Supp. 3d 806 (N.D. Cal. 2022) .....................................................................8

*Bentham v. Bingham L. Grp.*,
No. 13 Civ. 1424, 2013 WL 12186171 (S.D. Cal. Nov. 15, 2013) ...........................7

*Chen v. PayPal, Inc.*,
1 Cal. App. 5th 559 (2021) ........................................................................................9

*City of Portland v. HomeAway.com, Inc.*,
240 F. Supp. 3d 1099 (D. Or. 2017) ...............................................................10, 11

*di Grazia v. Sazerac Co., Inc.*,
No. 08 Civ. 01562, 2008 WL 11388684 (N.D. Cal. Dec. 16, 2008) .......................12

*Dorsey v. United States Bank Nat'l Ass'n*,
No. 11 Civ. 231, 2012 WL 13001917 (M.D. La. April 2, 2012) ..............................13

*Gardner v. Safeco Ins. Co. of Am.*,
No. 14 Civ. 02024, 2014 WL 2568895 (N.D. Cal. June 6, 2014) ..........................11

*Ghalchi v. U.S. Bank, N.A.*,
No. 14 Civ. 6619, 2015 WL 12655402 (C.D. Cal. Jan. 8, 2015) .............................14

*Godoy v. Horel*,
No. C 09-4793, 2010 WL 890148 (N.D. Cal. Mar. 8, 2010).....................................9

*Gonzales Commc'ns, Inc. v. Titan Wireless, Inc.*,
No. 04 Civ. 147, 2007 WL 1994057 (S.D. Cal. Apr. 18, 2007) .........................8, 12

*Gonzalez v. Gorsuch*,
688 F.2d 1263 (9th Cir. 1982) ...................................................................................3

*Guarnieri v. Be Money Inc.*,
No. 22 Civ. 01824, 2022 WL 11381916 (C.D. Cal. Oct. 18, 2022) ..................14, 15

*Hardin v. Bank of America*,
No. 22 Civ. 10023, 2022 WL 3568568 (E.D. Mich. Aug. 18, 2022) ....................................14

*In re HP Inkjet Printer Litig.*,
No. 05 Civ. 3580, 2006 WL 563048 (N.D. Cal. Mar. 7, 2006) ...............................................12

*Jay v. Serv. Emps. Int'l Union-United Health Care Workers W.*,
203 F. Supp. 3d 1024 (N.D. Cal. 2016) ..................................................................................7

*Klein v. Chevron U.S.A., Inc.*,
202 Cal. App. 4th 1342 (2012) ...............................................................................................12

*Lee v. Retail Store Employee Bldg. Corp.*,
No. 15 Civ. 04768, 2017 WL 346021 (N.D. Cal. Jan. 24, 2017) ...........................................10

*Nguyen v. Stephens Inst.*,
529 F. Supp. 3d 1047 (N.D. Cal. 2021) ...................................................................................8

*Nool v. HomeQ Servicing*,
653 F. Supp. 2d 1047 (E.D. Cal. 2009)....................................................................................7

*Peacock v. 21st Amend. Brewery Cafe, LLC*,
No. 17 Civ. 01918, 2018 WL 452153 (N.D. Cal. Jan. 17, 2018) ...........................................11

*Philips v. Ford Motor Co.*,
No. 14 Civ. 02989, 2015 WL 4111448 (N.D. Cal. July 7, 2015) ...........................................11

*Rollins v. Dignity Health*,
No. 13 Civ. 01450-JST (N.D. Cal. Nov. 3, 2017), ECF No. 243 ...........................................12

*Shawmut Worcester Cnty. Bank v. First Am. Bank & Trust*,
731 F. Supp. 57 (D. Mass. 1990) ...........................................................................................13

*Summit Fin. Holdings, Ltd. v. Cont'l Laws. Title Co.*,
27 Cal. 4th 705 (2002) .............................................................................................................7

*Uhlmeyer v. USAA Cas. Ins. Co.*,
No. 19 Civ. 00438, 2020 WL 732950 (D. Nev. Feb. 13, 2020) ..............................................8

*Volkswagen Grp. of Am., Inc. v. Smartcar, Inc.*,
No. 21 Civ. 04895-JST, 2022 WL 20184651 (N.D. Cal. July 7, 2022) ..................................8

*Zepeda v. PayPal, Inc.*,
777 F. Supp. 2d 1215 (N.D. Cal. 2011) ...................................................................................7

**Statutes**

15 U.S.C. § 1693f ..............................................................................................................14, 15

Cal. Civ. Code § 3523 ...............................................................................................................6

**Other Authorities**

12 C.F.R. § 1005.11 (2019) ...........................................................................................................14

31 C.F.R. § 587.202 (2022) .............................................................................................................6

31 C.F.R § 587.311 (2022) ..............................................................................................................3

31 C.F.R. § 587.315 (2022) .............................................................................................................3

31 CFR § 587.403 (2022) .................................................................................................................5

31 C.F.R. § 587.504 (2022) .............................................................................................................2

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

## I.    INTRODUCTION

Plaintiff appeals to this Court on the disingenuous premise that "there's nothing Plaintiff . . . can do about" her frozen funds. Opp'n at 1, Dkt. 35. But Plaintiff does have an appropriate avenue for relief: she can request a license from the Office of Foreign Assets Control ("OFAC"), the federal agency that sanctioned Plaintiff's bank and prohibited Defendants from transferring funds from the bank at issue. This Court cannot issue an order regarding funds that are fully blocked by OFAC, and Defendants are not legally permitted to act on funds subject to federal sanctions, which are still in effect today. As Defendants pointed out in their motion to dismiss ("MTD" or "Motion"), and as the merchant with whom Plaintiff transacted informed her long before the filing of this suit, OFAC is the only entity capable of granting Plaintiff the relief that she seeks. Her attempts to distract from this fundamental fact with irrelevant OFAC licenses and a misreading of the regulations does not change the reality of OFAC's sanctions. Consequently, her entire complaint must be dismissed for lack of standing.

Plaintiff's claims do not fare any better on the merits. Plaintiff's opposition only further underscores the many fatal flaws evident from her pleading. Even now, Plaintiff is unable to articulate factual allegations demonstrating the basic elements of any of her claims—including that she has any contractual relationship with Defendants, what contractual term or specific promise Defendants allegedly breached, any specific wrongdoing by Defendants, or that Defendants violated "error resolution" requirements under EFTA that are only applicable to statutorily defined "financial institutions." That is no surprise. Plaintiff's pled allegations, the agreements that she incorporates by reference into the FAC, and the judicially noticeable facts all confirm that

---

[1] Unless otherwise stated, Defendants incorporate all terms as defined in their motion to dismiss ("MTD" or "Motion"), Dkt. 28.

1  Defendants had no direct relationship with Plaintiff, who consented to the transactions at issue.

2  Defendants conducted all of those transactions in accordance with their published policies in their

3  Terms and the law. Plaintiff's speculation otherwise and repeated insistence that she is entitled to

4  plead claims in the alternative fall woefully short of her obligation to articulate factual allegations

5  sufficient to establish viable claims.

6       Moreover, Plaintiff makes no effort to refute that these flaws cannot be cured with further

7  amendment. Accordingly, Plaintiff's FAC must be dismissed in its entirety with prejudice.

8
## II.   OFAC REGULATIONS PREVENT THIS COURT FROM AWARDING THE
9         RELIEF PLAINTIFF SEEKS.

10      Plaintiff cannot meaningfully rebut Defendants' argument that this Court is incapable of

11  granting the relief Plaintiff seeks. Instead, she distracts from that fatal flaw by fabricating "factual"

12  issues and misconstruing the relevant OFAC regulations.

13      *First*, Plaintiff asserts that "there are disputed factual questions as to whether Ms.

14  Zurabova's funds were *ever* subject to the Alfa-Bank sanctions." Opp'n at 7 (emphasis in original).

15  But no such disputes exist based on the allegations in the FAC, when taken as true. Plaintiff herself

16  alleges that "the bank debit cards used for [Plaintiff's purchases] were issued by Alfa-Bank, a large

17  bank based in Russia." Dkt. 16 ¶ 19. And the full-blocking sanctions that went into effect pursuant

18  to Executive Order 14024 on April 6, 2022, mere weeks after Plaintiff's attempted transactions,

19  unequivocally apply to "*all* property . . . within the possession or control of any United States

20  person" of Alfa-Bank, *see* MTD RJN, Dkt. 29, Ex. B at 1 (emphasis added), which OFAC

21  designated as "operating or having operated in the financial services sector." *See* MTD RJN Ex. B

22  at 1.[2] 31 C.F.R. § 587.504 (2022) underscores this point: "Any payment of funds . . . in which a

23  person whose property and interests in property are blocked pursuant to § 587.201 has *any* interest

24  that comes within the possession or control of a U.S. financial institution *must be blocked*"

25

26

27  ---
    [2] On February 22, 2022, the Secretary of Treasury determined that the blocking provision of
28  Section 1(a)(i) of E.O. 14024 shall apply to the financial services sector of the Russian Federation.
    MTD RJN Ex. A at 3.

(emphasis added).[3] Based on a plain reading of the regulations, there can be no doubt that the funds Plaintiff seeks to recover were and continue to be blocked by OFAC sanctions, and that Defendants are legally prohibited from processing, transferring, or otherwise dealing in the funds. And whether those sanctions operate to bar judicial redress of Plaintiff's alleged injury is plainly a question of law that this Court may appropriately resolve at this stage. *Gonzalez v. Gorsuch*, 688 F.2d 1263, 1268 (9th Cir. 1982) (affirming dismissal for lack of standing because "redress for the wrong alleged by the plaintiff is beyond the limits of a judicial decree properly issued based on the allegations of the complaint").

*Second*, Plaintiff tries to evade the application of OFAC sanctions by arguing that it was not "the *intent* of the sanctions to freeze the funds of innocent individuals such as [Plaintiff]." Opp'n at 7 (emphasis in original).[4] That argument must be rejected. Plaintiff fails to set forth any legal authority to support the suggestion that OFAC's intent in issuing the sanctions should override the plain text of the sanctions themselves, which apply to all property, including money and other financial instruments, within the possession or control of any United States person. MTD RJN Ex. B at 1; Russian Harmful Foreign Activities Sanctions Regulations, 31 C.F.R § 587.311 (2022). And Plaintiff also overlooks the fact that OFAC's stated intent in issuing full-blocking sanctions against Alfa-Bank was not to target only "guilty" individuals, but rather to take drastic steps to "degrade the economy of the Russian Federation in response to Russia's continued brutal

---

[3] OFAC regulations define financial institutions much more broadly than Regulation E. *See* 31 C.F.R. § 587.315 (2022) (defining U.S. financial institution as "any U.S. entity that is engaged in the business of accepting deposits . . . [including] . . . money services businesses . . . ."). That Defendants are financial institutions obligated to follow OFAC regulations has no bearing on whether they are financial institutions owing Plaintiff error resolution obligations under EFTA. Under OFAC's definition, even the merchant, as a "dealer[] in precious metals, stones, or jewels," would be subject to OFAC sanctions and required to block these funds. *Id.*

[4] Plaintiff mistakenly relies on OFAC General License 50 to support this claim. General License 50 applies only to those transactions "ordinarily incident and necessary to (i) the closing of an account of an individual . . . and (ii) the unblocking and lump sum transfer of all remaining funds and other assets in the account to the account holder." Opp'n RJN Ex. 4 at 1. Plaintiff does not allege that her purchases were ordinarily incident and necessary to the closing of her account, nor does she claim that the purchases constitute a lump sum transfer of all remaining funds in her account. *See generally* Dkt. 16. General License 50 therefore does not authorize the transfer of Plaintiff's funds.

war against Ukraine and atrocities against Ukrainian citizens." MTD RJN Ex. D at 1. To effectuate that goal, OFAC issued broad, sweeping sanctions against Alfa-Bank that encompass the funds at issue here. Plaintiff's conclusory assertions that sanctions do not apply need not be taken as true where those assertions are contradicted by allegations in the complaint and the plain text of the regulations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (recognizing that conclusory allegations are not entitled to presumption of truth).

Plaintiff goes on to suggest that General License 23 somehow revives her claims and otherwise confers authority on this Court to issue the relief sought. But Plaintiff's reliance on OFAC's General License 23 is misplaced because that license authorized only those transactions that are "ordinarily incident" to the wind down of transactions involving Alfa Bank. Opp'n RJN, Dkt. 36, Ex. 3 at 3. Although OFAC did not define what transactions "ordinarily incident to wind down activities" meant for purposes of General License 23, with respect to other Russian banks that OFAC sanctioned and granted wind-down general licenses, OFAC has stated that "[w]ind-down activities do not include the continued processing of funds transfers . . . involving a blocked person that were part of ongoing business activities prior to the imposition of sanctions, unless separately authorized." Reply RJN Ex. A at 1. And paragraph (b) of General License 23 makes clear that it is a narrow exemption that "does not authorize any transactions otherwise prohibited by the Russian Harmful Foreign Activities Sanctions Regulations, 31 CFR part 587 (RuHSR), including transactions involving any person blocked pursuant to the RuHSR *other than the blocked persons described in paragraph (a) of this general license . . . .*" Opp'n RJN Ex. 3 at 3 (emphasis added). Plaintiff's mischaracterization—that General License 23 categorically "allowed transactions involving Alfa-Bank to proceed," Opp'n at 4–5—would read paragraph (b) out of the General License entirely. The OFAC guidance, coupled with the express language of the license itself, makes clear that General License 23 did not authorize Defendants to continue processing funds transfers involving Alfa-Bank that were part of Plaintiff's commercial transactions.

Plaintiff further argues that whether the funds were subject to OFAC sanctions is a disputed issue because "it is likely that Alfa-Bank no longer had any property interests in the funds" because

1   "Square had the funds in its possession for eight weeks." Plaintiff tellingly offers no authority to

2   suggest that the passage of time has any bearing on Alfa-Bank's interest in the property.[5] And even

3   if the timing were somehow relevant, Plaintiff's timeline of "eight weeks" is simply inaccurate

4   because it wholly ignores restrictions put in place by Visa on March 5, 2022, *see* MTD RJN Ex.

5   F, and improperly relies on General License 23, which for reasons explained above, does not apply

6   to these funds. Plaintiff also claims that discovery is necessary to determine whether Alfa-Bank's

7   interest was terminated because the funds "were handled first by another intermediary bank."

8   Opp'n at 9. But Plaintiff's proposed fishing expedition for such facts must be rejected. Her

9   suggestion that "the funds did not travel directly from Alfa-Bank to Square" is entirely absent

10  from, and indeed plainly contradicted by, the allegations of the complaint. Dkt. 16 ¶ 16 (alleging

11  that the funds were "transferred from several bank accounts to the custody of Square"). And

12  Plaintiff cannot rely on this imagined hypothetical scenario to push her "claims across the line

13  from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

14          Plaintiff also distracts from the issue of standing by pointing out irrelevant and contrived

15  "factual disputes" that have no bearing on the issue of redressability—for instance, Plaintiff claims

16  that whether Defendants placed a hold on Plaintiff's funds and whether such hold was reasonable

17  are jury questions. Opp'n at 8. Even if these issues were relevant to redressability—which they are

18  not—they are not disputed because she incorporates by reference communications showing that

19  Defendants flagged her unusual transaction activity: Defendants noted in a communication with

20  its customer, the merchant, "Multiple unique payment cards and zip codes were attempted when

21  paying this invoice. This is unusual behavior . . . ." Dkt. 16 ¶ 16; Dkt. 16-4 at 23. Putting aside the

22  fact that Plaintiff's own documents plainly authorized Defendants to hold her funds for

23  investigation, MTD RJN Ex. C § 12, Plaintiff misses the threshold issue of whether the Court has

24  the power to grant the relief that she seeks—her requested relief would effectively require

25  Defendants to violate federal sanctions laws.

26

27  _____

28  [5]  To the contrary, 31 CFR § 587.403 suggests that only a transfer pursuant to a license or
    authorization by OFAC would have terminated Alfa-Bank's interest in the funds.

Unable to articulate why a judicial order requiring Defendants to remit the blocked property would not be null and void pursuant to 31 C.F.R. § 587.202 (2022), Plaintiff resorts to an amorphous appeal to Cal. Civ. Code § 3523: "For every wrong there is a remedy." Opp'n at 9. But as Defendants' Motion makes clear, her complaint fails to state any plausible claim of wrongdoing by Defendants. And Plaintiff is not without a remedy—it is simply beyond the authority of this Court to issue it. Plaintiff does not, and cannot, rebut Defendants' assertion that the only entity capable of ordering a release of OFAC-sanctioned funds is OFAC. Despite being on notice of this process, *see* Dkt 16-5, Plaintiff does not explain why she has not applied for such a license. She cannot manufacture standing in this Court based on a "loss" that continues to exist because she has failed or refused to exercise the appropriate—and in this case exclusive—avenue for relief.

## III.   PLAINTIFF'S CLAIMS FAIL ON THE MERITS.

### A.   Plaintiff Fails to Allege Breach of Contract or of the Implied Covenant of Good Faith and Fair Dealing Because Her Complaint Establishes That the Defendants' Terms Expressly Authorized the Conduct at Issue.

In opposition, Plaintiff misreads Defendants' Terms—which govern Defendants' relationships with *merchants*. For example, the General Terms state, "You must open an account with us (a 'Square Account') to use the Services," and "Square will process certain of your customers' or employees' personal data on behalf of your business as a service provider." Dkt. 16-1 §§ 1, 8. The Payment Terms similarly state, "Square is a payment facilitator that allows you to accept Cards from customers for the payment for goods and services." MTD RJN Ex. C § 1. Plaintiff never alleges she had a Square Account or that she has a business with employees or customers utilizing Square. The Terms do not provide for a customer, like Plaintiff, to invoke a contractual relationship with Defendants by paying for merchandise thereby "utilizing Square's services, its website, [and] software." Opp'n at 4.

Plaintiff incorrectly states that "Square nonetheless argues that it is not actually bound by any agreement to provide the services which it agrees to provide." Opp'n at 11. Defendants have never disputed that Square transactions are bound by the Terms, which explicitly provide that Defendants have the right to "defer payout" and "restrict access" to the merchant's funds pending

investigation in response to unusual activity, and later in order "to comply with applicable law." MTD RJN Ex. C § 12; Dkt. 16-1 § 3.2. But because Defendants' counterparties to the Terms are their *merchants*—not the merchants' customers—Plaintiff has no contractual relationship with Defendants that would give rise to a breach of contract claim.

Plaintiff misstates Defendants' arguments regarding her good faith and fair dealing claim. First, because Plaintiff is not in a contractual relationship with Defendants, she cannot plead a contractual good faith and fair dealing claim. *Jay v. Serv. Emps. Int'l Union-United Health Care Workers W.*, 203 F. Supp. 3d 1024, 1034 (N.D. Cal. 2016) ("Under California law, a claim for breach of this implied covenant [of good faith and fair dealing] is necessarily based on the existence of an underlying contractual relationship[.]"). Second, because no fiduciary relationship exists between the parties, she cannot sustain a tortious (as opposed to contractual) good faith and fair dealing claim. *See Nool v. HomEQ Servicing*, 653 F. Supp. 2d 1047, 1056 (E.D. Cal. 2009). Plaintiff's belated attempts to portray Defendants as an escrow agent certainly fail to demonstrate the necessary fiduciary relationship. Not only is this characterization found nowhere in the FAC, it is irrelevant. As Plaintiff's cited authority recognizes, an "escrow holder's obligations are limited to faithful compliance with [the depositors'] instructions." *Summit Fin. Holdings, Ltd. v. Cont'l Laws. Title Co.*, 27 Cal. 4th 705, 711 (2002) (citations and quotation marks omitted). Defendants, on the other hand, must comply with applicable laws and regulations. Moreover, even if Defendants were considered an escrow agent, "[a]n escrow holder is often considered a limited fiduciary[.]" *Bentham v. Bingham L. Grp.*, No. 13 Civ. 1424, 2013 WL 12186171, at *6 (S.D. Cal. Nov. 15, 2013) (citations and alterations omitted).

Because Plaintiff's allegations supporting her good faith and fair dealing claim are the same as those supporting her breach of contract claim, her good faith and fair dealing claim should be dismissed as superfluous. *Compare* Dkt. 16 ¶¶ 44–48, *with* Dkt. 16 ¶¶ 49–53; *Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1221 (N.D. Cal. 2011) ("If the allegations in a breach of implied covenant claim do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.").

In support of her argument that her good faith and fair dealing claim should survive despite being duplicative of her breach of contract claim, Plaintiff cites only two cases mentioning good faith and fair dealing claims that are duplicative of contract claims, and neither is on point. In *Gonzales*, the court evaluates an unjust enrichment counterclaim, not a good faith and fair dealing claim. *Gonzales Commc'ns, Inc. v. Titan Wireless, Inc.*, No. 04 Civ. 147, 2007 WL 1994057, at *3 (S.D. Cal. Apr. 18, 2007). And *Uhlmeyer* evaluates alternative pleading rules under Nevada law. *Uhlmeyer v. USAA Cas. Ins. Co.*, No. 19 Civ. 00438, 2020 WL 732950, at *4 (D. Nev. Feb. 13, 2020). Plaintiff also cites *Volkswagen* to support her argument, but *Volkswagen* broadly analyzes the ability to plead statutory and common law claims with overlapping fact patterns. *Volkswagen Grp. of Am., Inc. v. Smartcar, Inc.*, No. 21 Civ. 04895-JST, 2022 WL 20184651, at *6 (N.D. Cal. July 7, 2022) ("The Court begins by rejecting Smartcar's argument that Volkswagen's tort-and contract-based claims should be dismissed with prejudice because they are 'entirely duplicative' of Volkswagen's *statutory* claims.") (emphasis added). Moreover, aside from her statutory and contract claims, the *Volkswagen* plaintiff brought common law claims for trespass to chattels and tortious interference—neither of which Plaintiff brings here. Dkt. 16 ¶¶ 60–69, 89–94, *Volkswagen Grp. of Am., Inc. v. Smartcar, Inc.*, No. 21 Civ. 04895-JST (N.D. Cal. Nov. 3, 2017), ECF No. 1.

### B.   Plaintiff's Conversion Claim Fails Because She Admits She Assented to the Transactions.

Plaintiff pleads herself out of a conversion claim by alleging that she willingly transacted with the merchant, who is subject to the Terms.[6] *See* Dkt. 16 ¶¶ 10, 12, 15–16; Dkt. 16-1 at 3, 14, 17. As Plaintiff acknowledges in her opposition, Defendants' Payment Terms explicitly provide

---

[6] Alternatively, should the Court find that Plaintiff has adequately pled a breach of contract claim notwithstanding the absence of a contractual relationship or Defendants' breach of any contractual terms, her conversion claim should fail because it mirrors her claim for breach of contract. *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1058 (N.D. Cal. 2021) ("A plaintiff may not ordinarily recover for the tort of conversion for the breach of duties that merely restate contractual obligations."); *Beluca Ventures LLC v. Aktiebolag*, 622 F. Supp. 3d 806, 815 (N.D. Cal. 2022) (noting that the plaintiff's "allegations supporting its claim for conversion mirror its allegations supporting the breach of contract claim, and appear largely foreclosed by *Nguyen*").

that Defendants "may defer payout or restrict access to [the proceeds of each transaction] if we need to conduct an investigation" or "as necessary to comply with applicable law[.]" MTD RJN Ex. C § 12; Opp'n at 15. Per her allegations, when she transacted with the merchant, she did so pursuant to these Terms, which explicitly authorize Defendants to hold the funds and decline to settle the transaction in order to investigate and comply with applicable law. Dkt. 16-1 at 3, 14, 17; MTD RJN Ex. C § 23.

*Chen v. PayPal, Inc.*, presents an identical situation—just with different terms of service. 61 Cal. App. 5th 559, 576 (2021). Like Plaintiff, Chen assented to the initial taking of funds per certain terms, and then brought a conversion suit when the funds were treated per those terms. Because Plaintiff assented to the taking of her funds, per her own complaint, she is foreclosed from bringing a conversion claim now. *See Godoy v. Horel*, No. C 09-4793, 2010 WL 890148, at *5 (N.D. Cal. Mar. 8, 2010) ("[B]ecause plaintiffs expressly assented to the purchases (and do not allege that they did not assent to the purchases), they cannot state a plausible claim for conversion.").

Plaintiff is mistaken that her assent is a "factual issue that cannot be resolved on a motion to dismiss," Opp'n at 16—she affirmatively pleads that "the Merchant directed [her] to use Square's payment processing services," Dkt. 16 ¶ 12, and that she did use those services, *id.* ¶¶ 15–16. There is no dispute as to this fact.

C.   **Plaintiff's Promissory Estoppel Claim Fails Because Defendants Made No Promise to Permit—and Expressly Reserved the Right to Defer or Restrict—Plaintiff's Transactions Based on Their Terms.**

Plaintiff also pleads herself out of a promissory estoppel claim because the Terms she incorporates by reference into her pleadings explicitly reserve the right to defer or restrict the transactions she entered into with the merchant. Her opposition fails to address this deficiency, and instead makes uncited claims about Defendants' business's "entire premise." Opp'n at 16–17. By Plaintiff's own pleadings, Defendants clearly and unambiguously put Plaintiff on notice that they would defer payment and would not fulfill a transaction (1) if an investigation is necessary, or (2) as necessary to comply with applicable laws. MTD RJN Ex. C §§ 12, 23; *see also* Dkt. 16-

1. For this reason, she cannot sustain a promissory estoppel claim. *First*, Defendants explicitly did not promise to disburse the funds Plaintiff processed with the merchant under any circumstance—in fact, they specifically enumerated the circumstances under which they would *not* disburse the funds, as occurred here. Plaintiff cannot cite to any provision in the Terms stating otherwise. Opp'n at 16–17. *Second*, Plaintiff could not have reasonably or foreseeably relied on an unarticulated promise that explicitly contradicts its publicly available terms. Her promissory estoppel claim is undermined by the documents she incorporates into the FAC. *See City of Portland v. HomeAway.com, Inc.*, 240 F. Supp. 3d 1099, 1111 (D. Or. 2017) ("If a plaintiff's allegations contradict documents referenced in the complaint, a court need not accept those allegations as true.").

No "resolution of factual disputes" is necessary to adjudicate this issue, Opp'n at 17—Plaintiff attaches the General Terms to her pleading, which incorporate the Payment Terms, Dkt. 16-1; MTD RJN at 3. Both documents explicitly negate her vague allegations that Defendants "implicitly or explicitly promised" to transfer funds to the merchant. MTD RJN Ex. C §§ 12, 23; *see also* Dkt. 16-1.

### D. Plaintiff's CLRA Claim Fails Because She Identifies No False or Misleading Statements by Defendants.

Plaintiff's complaint does not plead a claim under the CLRA, MTD at 14–15, and she does not argue otherwise in opposition, *see* Opp'n. Because she does not contest Defendants' arguments, the Court should consider her CLRA claims waived. *Lee v. Retail Store Employee Bldg. Corp.*, No. 15 Civ. 04768, 2017 WL 346021, at *20 (N.D. Cal. Jan. 24, 2017) ("The Court denies leave to amend because Plaintiffs' failure to even argue the issue in their opposition indicates a waiver of this claim.").

### E. Plaintiff's UCL Claim Fails Because She Alleges No Misconduct.

Plaintiff's pleadings foreclose her UCL claim because the FAC attaches and incorporates Defendants' Terms, which state that Defendants may defer payout, restrict access to funds, or decline to settle a transaction if Defendants need to conduct an investigation and/or comply with laws. MTD RJN Ex. C § 12; Dkt. 16-1 § 3.2. That is precisely what happened here. She does not

and cannot allege unlawful conduct or deception on Defendants' part. Her opposition misstates her pleading—Defendants are not "*now* claim[ing] that [they were] permitted to hold such funds for investigation," Opp'n at 17 (emphasis in original)—this position is clearly stated in their Terms. MTD RJN Ex. C § 12; Dkt. 16-1 § 3.2. Plaintiff's own pleadings attach and incorporate Defendants' public Terms, which explicitly warn that funds could be frozen or held indefinitely. *Id.* Accordingly, her UCL claims are inadequately pleaded. *City of Portland*, 240 F. Supp. 3d at 1111.

Even if her UCL claim were properly pled, should any of Plaintiff's other claims survive the pleading challenge, such claims provide her with an adequate remedy at law. For this reason, her UCL claim can be dismissed if any of her other claims survive. *Philips v. Ford Motor Co.*, No. 14 Civ. 02989, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015); *see, e.g.*, *Gardner v. Safeco Ins. Co. of Am.*, No. 14 Civ. 02024, 2014 WL 2568895, at *7–8 (N.D. Cal. June 6, 2014) (dismissing UCL claim where plaintiffs' claims for breach of contract and breach of implied covenants provided an adequate remedy at law). In opposition, Plaintiff concedes this point: "Defendants argue that Ms. Zurabova has no contractual or quasi-contractual rights and, if the court were to ultimately agree with such arguments, Ms. Zurabova's UCL claim might represent her only remedy under the law." Opp'n at 18. Plaintiff's cited authority also does not contradict Defendants' position. In *Peacock*, the plaintiff's "only remaining claims are under the UCL[,]" meaning that the plaintiff had no other remedy under the law. *Peacock v. 21st Amend. Brewery Cafe, LLC*, No. 17 Civ. 01918, 2018 WL 452153, at *9 (N.D. Cal. Jan. 17, 2018).

### F. Plaintiff Cannot Bring an Unjust Enrichment Claim Because She Alleges a Contract Governs the Dispute.

Plaintiff's opposition does not address her insufficient pleading: Plaintiff does not and cannot plead that Defendants received a benefit from holding her funds. Opp'n at 18–19. OFAC sanctions expressly prohibit Defendants from using the funds or earning any interest on them. RJN Ex. D at 5. This failure is fatal to her unjust enrichment claim.

Moreover, Plaintiff explicitly (albeit erroneously) pleads that a contractual relationship existed between her and Defendants, and she reiterates those claims in her opposition. Dkt. 16 ¶

12; Opp'n at 2–4. She fails to properly plead in the alternative and forecloses her unjust enrichment claim for this additional reason. In *Klein v. Chevron U.S.A., Inc.*, the plaintiff alleged a claim for breach of contract and for unjust enrichment. 202 Cal. App. 4th 1342, 1389 (2012). The court acknowledged that "a plaintiff may plead inconsistent claims that allege both the existence of an enforceable agreement and the absence of an enforceable agreement[.]" *Id.* In dismissing the plaintiff's unjust enrichment claims, however, the court noted that the "unjust enrichment claim does not allege that [the] contract is unenforceable or that the parties did not have a contract[.]" *Id.* Indeed, because the plaintiff's "pleadings and briefs do not provide any explanation as to why the [contract] referenced in their breach of contract claim might be unenforceable or otherwise not qualify as a contract," the plaintiff was precluded from asserting a quasi-contract claim under the theory of unjust enrichment. *Id.*

Nothing Plaintiff cites suggests the contrary. Unlike *Klein*, the *Rollins* plaintiff pled in the alternative "a state law claim for unjust enrichment against [the defendant] *to the extent that the [contract] did not create an enforceable contractual relationship between [the parties]*." Am. Class Action Compl. ¶ 243, *Rollins v. Dignity Health*, No. 13 Civ. 01450-JST (N.D. Cal. Nov. 3, 2017), ECF No. 243 (emphasis added). And the plaintiffs in *HP Inkjet* did not plead a breach of contract—to the contrary, they argued that "[t]here has been no bargain-for-exchange between [the parties.]" *In re HP Inkjet Printer Litig.*, No. 05 Civ. 3580, 2006 WL 563048, at *7 (N.D. Cal. Mar. 7, 2006).[7] Plaintiff's two-fold failure to (1) allege the elements of an unjust enrichment claim, and (2) plead in the alternative warrant dismissal of her unjust enrichment claim.

### G.   Plaintiff's EFTA Claim Fails Because Defendants Did Not Act as a Financial Institution for Plaintiff and Plaintiff Does Not Allege an Error.

Plaintiff's FAC on its face shows that her EFTA claim must be dismissed, for at least two reasons.

---

[7] Plaintiff's other authorities supporting this argument rely on *HP Inkjet*. *See di Grazia v. Sazerac Co., Inc.*, No. 08 Civ. 01562, 2008 WL 11388684, at *5 (N.D. Cal. Dec. 16, 2008); *Gonzales*, 2007 WL 1994057, at *3 n.2.

1    *First*, Defendants did not act as a financial institution with respect to providing services to

2    Plaintiff, and consequently never owed her any error resolution obligations. On this point, Plaintiff

3    mischaracterizes Defendants' argument—the issue is not whether Defendants can *ever* be

4    described as a financial institution, or whether they *ever* offer banking services that are wholly

5    irrelevant to Plaintiff's complaint.[8] The issue is whether Defendants acted as a financial institution

6    with respect to Plaintiff and her complained-of conduct. *See Shawmut Worcester Cnty. Bank v.*

7    *First Am. Bank & Trust*, 731 F. Supp. 57, 62 (D. Mass. 1990) (opining that EFTA contemplates the

8    existence of a "financial institution and consumer relationship" before liability may attach). The

9    very case from which Plaintiff selectively quotes establishes that proposition. *Dorsey v. United*

10   *States Bank Nat'l Ass'n*, No. 11 Civ. 231, 2012 WL 13001917, at *6 (M.D. La. April 2, 2012). In

11   *Dorsey*, the Court dismissed an EFTA claim against PayPal where the plaintiff failed to allege that

12   he ever opened an account or entered a contractual agreement with PayPal. *Id.* "Without showing

13   a direct agreement for EFT services between Plaintiff and PayPal, EFTA does not apply to PayPal

14   in this instance." *Id.* The same conclusion must be reached here—Plaintiff does not and cannot

15   allege that Defendants hold, directly or indirectly, an account belonging to her. Nor can Plaintiff

16   show a direct agreement for EFT services that exists between herself and Defendants. At the

17   pleading stage, Plaintiff bears the burden of alleging facts to support the applicability of EFTA.

18   She improperly seeks to shift this burden by claiming "the mere fact that Square claims that it is

19   not a bank does not make that fact true nor can it override Plaintiff's allegation that Defendants

20   are a 'financial institution' under the EFTA." Opp'n at 20. But well-established law instructs that

21   Plaintiff's mere conclusory assertion that Defendants are a financial institution under EFTA does

22   not make that assertion correct as a matter of law. *See Twombly*, 550 U.S. at 555 (2007)

23   (recognizing that court is "not bound to accept as true a legal conclusion couched as a factual

24   allegation").

---

[8] Plaintiff points out a statement on Defendants' website that observes that "[b]anking services are provided by Square's banking affiliate, Square Financial Services, Inc." Opp'n at 20. As previously noted, Square Financial Services, Inc. is an independently governed subsidiary that is entirely unrelated to the Square point-of-sale product at issue. MTD at 3–4.

*Second*, Plaintiff's EFTA claim must fail because she fails to allege the existence, or even her belief in the existence, of a cognizable error under EFTA. To be clear, "error" is a statutorily defined term under EFTA which includes, among other things, unauthorized or incorrect electronic fund transfers, the omission of a transfer from a periodic statement, a consumer's receipt of an incorrect amount of money from an electronic terminal, and requests for additional information concerning an electronic fund transfer. *See* 12 C.F.R. § 1005.11(a)(1). Here, Plaintiff wholly fails to explain how Defendants' holding of funds, pursuant to their terms and pursuant to federal law, falls within any identified error category. Indeed, courts have held that "[Regulation E] does not define account freezes as an 'error' covered under the EFTA." *Hardin v. Bank of America*, No. 22 Civ. 10023, 2022 WL 3568568, at *3 (E.D. Mich. Aug. 18, 2022). Plaintiff's cited authority does not establish otherwise—it only supports the true but entirely irrelevant proposition that, in the consumer-financial institution context, a request for additional information about electronic fund transfers qualifies as an error. *In re Bank of Am. Cal. Unemployment Benefits Litig.*, No. 21-md-2992, 2023 WL 3668535, at *8 (S.D. Cal. May 25, 2023). For one, in relying on this case, Plaintiff rewrites the allegations of the FAC, which describe the error as "[t]he failure of Square to refund the Funds to Zurabova or transfer the Funds to the Merchant," Dkt. 16 ¶ 77, not as an unanswered request for additional information. And for another, that case does not support the theory that Plaintiff advances here—that there is an "error" under EFTA when a person, who does not own or hold any consumer account with a company, complains to that company that transactions she has entered into at the direction of a third-party merchant were frozen pursuant to federal law.

Plaintiff goes on to argue that a consumer's "belief" that any error occurred, rather than the actual existence of an error as defined by EFTA, triggers error resolution obligations. But a consumer cannot simply invoke EFTA based on a subjective (even if sincere) belief that they were wronged. In other words, in order to trigger 15 U.S.C. § 1693f, the issue the consumer reports must be one that, if it had in fact occurred, would constitute a cognizable error under EFTA. *See Ghalchi v. U.S. Bank, N.A.*, No. 14 Civ. 6619, 2015 WL 12655402, at *8 (C.D. Cal. Jan. 8, 2015) (dismissing EFTA error resolution claim because "Plaintiff has not pled that she informed

Defendant of *the type of error* that triggers defendant's duties under the EFTA" (emphasis added)). As Plaintiff's own cited authority explains, "§ 1693f(a) speaks of a consumer's 'belief' that its submitted documentation supports an 'error' *under the statute* occurred." *Guarnieri v. Be Money Inc.*, No. 22 Civ. 01824, 2022 WL 11381916, at *6 (C.D. Cal. Oct. 18, 2022) (emphasis added). While *Guarnieri* recognizes that a consumer need not demonstrate that an error actually occurred before § 1693f obligations kick in, it does not support Plaintiff's suggestion that any complaint about any perceived issue, regardless of whether the issue is tethered to a recognized error under EFTA, will trigger error resolution obligations. According to Plaintiff's theory, financial institutions could be liable under § 1693f when a consumer complains that the institution, for example, denied a loan application, based on a "sincere" but entirely mistaken belief that the decision was made in "error" under EFTA. Plaintiff offers no authority to support such a broad and illogical reading of EFTA.

Plaintiff's artful pleading and arguments cannot save her EFTA claim, which must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's First Amended Complaint with prejudice.

Dated:  July 20, 2023

**KING & SPALDING, LLP**

By: _/s/ Lennette W. Lee_
  Lennette W. Lee (SBN 263023)
  *llee@kslaw.com*
  KING & SPALDING LLP
  633 W. 5th Street, Suite 1600
  Los Angeles, CA 90071
  Tel: (213) 443-4355
  Fax: (213) 443-4310

  Leigh Nathanson (admitted *pro hac vice*)
  *lnathanson@kslaw.com*
  KING & SPALDING LLP
  1185 Avenue of the Americas, 34th Floor
  New York, NY 10036
  Tel: (212) 556-2100
  Fax: (212) 556-2222

  Attorneys for Defendants
  BLOCK, INC., SQUARE CAPITAL, LLC,
  and SQUARE FINANCIAL SERVICES, INC.