UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARIA ZURABOVA,

                    Plaintiff,

          v.

BLOCK, INC., et al.,

                    Defendants.

Case No. 23-cv-00953-JST

**ORDER GRANTING MOTION TO DISMISS**

Re: ECF No. 28

Before the Court is Defendants Block, Inc., Square Capital, LLC, and Square Financial Services, Inc.'s ("Defendants") motion to dismiss.  ECF No. 28.  Because the Court concludes that Plaintiff Maria Zurabova lacks standing, it declines to reach the merits of the motion.

I.    **BACKGROUND**

    A.    **Square's Services for Merchants**

Defendants "create tools that empower businesses and sellers to participate in the economy."  ECF No. 28 at 12.  Square, the point-of-sale software relevant in this dispute, "helps merchants start, run, and grow their businesses by enabling them to accept card payments, providing reporting and analytics, and facilitating next-day settlement."  *Id.*

    B.    **Imposition of Sanctions against Russia**

On April 15, 2021, President Biden issued an Executive Order that expanded existing sanctions on Russia, including new restrictions on the ability of U.S. financial institutions to deal in Russian sovereign debt.  Exec. Order No. 14024, Blocking Property With Respect To Specified Harmful Foreign Activities of the Government of the Russian Federation, 86 Fed. Reg. 20249–50 (Apr. 15, 2021) ("E.O. 14024"); C.F.R. § 587.201 (2022) (implementing E.O. 14024).  Amidst the burgeoning Russia-Ukraine war, on February 24, 2022, the Office of Foreign Assets Control

United States District Court
Northern District of California

("OFAC") issued a new directive pursuant to E.O. 14024, effective March 26, 2022, prohibiting U.S. persons from entering transactions related to the issuance of new debt to certain Russian entities, including Joint Stock Company Alfa-Bank ("Alfa-Bank"). ECF No. 29-1 at 4; 87 Fed. Reg. 32306 (Feb. 24, 2022). As the war between Russia and Ukraine escalated, Visa suspended all Russian operations on March 5, 2022, thereby blocking "all transactions initiated with Visa cards issued in Russia[,]" and preventing the use of "any Visa cards issued by financial institutions outside of Russia . . . within the Russian Federation." ECF No. 29-6 at 2. On April 6, 2022, OFAC imposed "full blocking restrictions" against Alfa-Bank, effective immediately. ECF Nos. 29-1 at 6; 29-4 at 2, 6–7; *see* 31 C.F.R. § 587.202 (2022).

### C.   Plaintiff's Transactions

On March 7, 2022, Zurabova initiated the first of several purchases of loose diamonds, gemstones, and diamond jewelry from Royal Star Inc., a merchant in New York. ECF No. 16 ¶ 11. Royal Star directed Zurabova to use Square's payment processing services. *Id.* ¶ 12. Between March 7 and March 9, Zurabova received approximately 28 invoices for her transactions, amounting to $645,083. *Id.* ¶ 15. She paid the invoices using debit cards belonging to six people, including herself. *Id.* ¶ 16 n.1. Each card used was linked to an Alfa-Bank account. *Id.* ¶ 19.

Defendants received Zurabova's funds before any OFAC sanctions against Alfa-Bank took effect on March 26, 2022, and April 6, 2022, respectively. *Id.* ¶ 22. Furthermore, Zurabova alleges that the sanctions imposed on March 26, 2022 "only covered transactions involving Alfa Bank debt or equity, and not purchases with debit cards," and thus they "do not apply to [her]." *Id.* ¶ 23. Square never released the funds to the merchant, never refunded the money to Zurabova, and continues to hold Zurabova's money today.[1] *Id.* ¶¶ 22–24.

On March 3, 2023, Zurabova brought this action against Defendants, ECF No. 1, and on May 1, 2023, she filed a first amended complaint, ECF No. 16. She now brings eight claims for: (1) conversion; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) promissory estoppel; (5) breach of the California Consumers Legal Remedies Act, *see* Cal.

---

[1] Because Square never paid Royal Star, Royal Star never provided Zurabova with the merchandise for which she paid. ECF No. 16 ¶ 25.

Civil Code §§ 1750 *et seq*.; (6) violations of California's Unfair Competition Law, *see* Cal Bus. & Prof. Code §§ 17200, *et seq*.; (7) unjust enrichment; and (8) violations of the Electronic Funds Transfer Act, 15 U.S.C. §§ 1693, *et seq*.

## II.      JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

## III.     JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  If a fact is not subject to reasonable dispute, the court "must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).

Both parties filed unopposed requests for judicial notice.  ECF Nos. 29, 36, 39-1. Defendants request judicial notice of (1) portions of the Federal Register from May 31, 2022, ECF Nos. 29-1, 29-2; (2) Square's payment terms, ECF No. 29-3; (3) OFAC's announcement of sanctions against Alfa-Bank on April 6, 2022, ECF No. 29-4; (4) Russian President Vladimir Putin's executive order announcing sanctions against the United States on March 1, 2022, ECF No. 29-5; (5) Visa's notice suspending Russian operations on March 5, 2022, ECF No. 29-6; (6) Appendix F of the Bank Secrecy Manual issued by the Federal Financial Institutions Examination Council, ECF No. 29-7; and (7) OFAC guidance concerning the wind-down period for transactions involving sanctioned Russian financial institutions, ECF No. 39-2.  Plaintiff requests judicial notice of (1) Square's payment terms, ECF No. 36-1; (2) Square's privacy notice, ECF No. 36-2; (3) OFAC's general licenses, ECF Nos. 36-3, 36-4; and (4) portions of Square's website, ECF No. 36-5.

All of the materials proposed by both parties are government records taken from websites maintained by government agencies, or undisputed matters of public record, and are therefore properly subject to judicial notice.  *See DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 763 n.5 (9th Cir. 2018) (taking judicial notice of "government documents . . . and undisputed

United States District Court
Northern District of California

3

1   matters of public record").  A court may also consider "documents incorporated by reference in

2   the complaint" at the motion to dismiss stage.  *U.S. v. Richie*, 342 F.3d 903, 908 (9th Cir. 2003).

3   The Court therefore takes judicial notice of the transaction invoices, among other documents, that

4   Zurabova included in her complaint.  ECF No. 16-1–16-8.

5   **IV.    LEGAL STANDARD**

6         "Article III of the Constitution confines the federal judicial power to the resolution of

7   'Cases' and 'Controversies.'"  *TransUnion LLC v. Ramirez*, —— U.S. ——, 141 S. Ct. 2190, 2203

8   (2021).  "For there to be a case or controversy under Article III, the plaintiff must have a 'personal

9   stake' in the case—in other words, standing."  *Id*. (quoting *Raines v. Byrd*, 521 U.S. 811, 819

10   (1997)).  A defendant may attack a plaintiff's assertion of jurisdiction by moving to dismiss under

11   Rule 12(b)(1) of the Federal Rules of Civil Procedure.  *Cetacean Cmty. v. Bush*, 386 F.3d 1169,

12   1174 (9th Cir. 2004); *see also Maya v. Centex Corp*., 658 F.3d 1060, 1067 (9th Cir. 2011)

13   ("[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under

14   Federal Rule of Civil Procedure 12(b)(1).").

15         "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v.*

16   *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the

17   allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.

18   By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by

19   themselves, would otherwise invoke federal jurisdiction."  *Id.*  Where, as here, a defendant makes

20   a factual attack, the court is permitted to "look beyond the complaint" and "need not presume the

21   truthfulness of the plaintiffs' allegations."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)

22   (citation omitted).

23   **V.    DISCUSSION**

24   **A.    Article III Standing**

25         "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is

26   concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the

27   defendant, and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion*, 141

28   S. Ct. at 2203.  "The party invoking federal jurisdiction bears the burden of establishing these

United States District Court
Northern District of California

4

elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

At issue before the Court is whether Zurabova's injury is redressable. "Redressability requires an analysis of whether the court has the power to right or to prevent the claimed injury." *Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982). Zurabova seeks an order requiring Defendants to remit the funds to herself. ECF No. 16 at 13. Defendants respond that Zurabova cannot establish that judicial relief will redress the claimed injury because her requested relief would "violate federal sanctions laws." ECF No. 39 at 10. Because the Court agrees that the remedy Zurabova seeks is beyond its authority to grant, the Court will dismiss this action for lack of standing.

OFAC regulations plainly state that the sanctions against Alfa-Bank may not be circumvented by judicial order: "Unless licensed pursuant to this part, any . . . judicial process is null and void with respect to any property or interest in property blocked pursuant to § 587.201." 31 C.F.R. § 587.202 (2022). Per this regulation, only OFAC can grant Zurabova the relief she seeks. *See* 31 C.F.R. § 501.801 (2019) (stating that applications for specific licenses to engage in prohibited transactions must be filed through OFAC). While Zurabova contends that it was not the "intent of the sanctions to freeze funds of innocent individuals" such as herself, she points to no legal authority that would allow this Court to override the express text of the sanctions regulation. *Cf. Republic of Marshall Islands v. United States*, 865 F.3d 1187, 1199 (9th Cir. 2017) (quoting *Edye v. Robertson*, 112 U.S. 580, 598 (1884)) ("When a state party violates a non-self-executing treaty provision, 'the judicial courts have nothing to do and can give no redress.'").

Zurabova argues that General Licenses 50 and 23 confer authority on the Court to issue the requested relief. ECF No. 35 at 13–14. Her reliance is misplaced. First, the plain text of General License 50 makes clear that it applies only to transactions "ordinarily incident and necessary to (i) the closing of an account of an individual . . . and (ii) the unblocking and lump sum transfer of all remaining funds and other assets in the account to the account holder." ECF No. 36-4 at 2.

United States District Court
Northern District of California

1    Zurabova neither claims that her purchases were ordinarily incident and necessary to the closing of

2    her account, nor does she allege that her purchases constituted a lump sum transfer of all

3    remaining funds in her account.  Thus, General License 50 does not apply.

4            General License 23, by contrast, authorizes transactions "ordinarily incident and necessary

5    to the wind down of transactions involving Alfa Bank."  ECF No. 36-3 at 3.  OFAC has not

6    specifically defined what transactions are "ordinarily incident to wind down activities" under

7    General License 23.  However, other OFAC licenses pertaining to Russian Harmful Foreign

8    Activities Sanctions state that "[w]ind-down activities do not include the continued processing of

9    funds transfers . . . involving a blocked person that were part of ongoing business activities prior

10   to the imposition of sanctions[.]"  ECF No. 39-2 at 2.  Accordingly, OFAC guidance makes clear

11   that General License 23 did not authorize Defendants to process Zurabova's funds.[2]

12           Zurabova's remaining arguments are likewise unpersuasive.  She contends that "there are

13   disputed factual questions as to whether [her] funds were ever subject to Alfa-Bank sanctions."

14   ECF No. 35 at 13 (emphasis omitted).  But Zurabova's own complaint, which must be taken as

15   true, alleges that "the debit cards used to pay the Invoices were linked to Russian bank accounts,

16   one of which was a Russian Alfa-Bank account in Ms. Zurabova's name."  ECF No. 16 ¶ 19.  The

17   full-blocking sanctions imposed on April 6, 2022 undisputedly apply to "all property . . . within

18   the possession or control of any United States person" of Alfa-Bank, and thus, the funds at issue

19   are squarely implicated (and continue to be implicated) by these sanctions.  ECF No. 29-2 at 1.

20           Additionally, Zurabova claims that Square possessed the funds for eight weeks before the

21   sanctions attached, and thus, "Square could have but did not remit the funds during that period of

22   time."  ECF No. 35 at 14 (emphasis omitted).  While Square acquired the funds between March 7

23   and March 9, 2022, they nonetheless later became subject to sanctions.  And, as Defendants point

24   out, even if timing were relevant to the question of redressability, Visa suspended all transactions

25   initiated with Visa cards issued in Russia on March 5, 2022—two days before Zurabova

26

27   _____

28   [2] Even if Zurabova is correct that General License 23 "permitted financial institutions to continue
     to process transactions involving Alfa-Bank assets through May 6, 2022," that does not grant the
     Court permission to ignore sanctions that have since been imposed.  ECF No. 35 at 14.

United States District Court
Northern District of California

1    commenced her transactions.  *See* ECF Nos. 16-4 at 2–31; 39 at 10.

2          Finally, the Court is unpersuaded by Zurabova's claim that Defendants' must be "held

3    liable for the damages so caused," ECF No. 35 at 15, because "[f]or every wrong there is a legal

4    remedy."  Cal. Civ. Code § 3523.  Zurabova is not without a remedy—but that remedy lies beyond

5    the authority of this Court.[3]

6                                         **CONCLUSION**

7          For the foregoing reasons, Defendants' motion is granted.  Because Zurabova cannot cure

8    the basic flaw in her pleading, the Court dismisses her complaint without leave to amend.  *See*

9    *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1088 (9th Cir. 2002) ("Because any amendment

10   would be futile, there is no need to prolong the litigation by permitting further amendment.").

11         **IT IS SO ORDERED.**

12   Dated:  November 27, 2023

13                                         _____

14                                         JON S. TIGAR
                                           United States District Judge

_____

[3] In light of this conclusion, the Court does not reach Defendants' remaining arguments in support
of their motion to dismiss.

United States District Court
Northern District of California